**In re Bernard BETTIS, Petitioner.**

**No. 93–BG–736.**

District of Columbia Court of Appeals.

Argued April 6, 1994.

Decided July 25, 1994.

As revised July 25, 1994.

Steven C. Tabackman, Washington, DC, for petitioner.

Elizabeth A. Herman, Asst. Bar Counsel, with whom Leonard H. Becker, Bar Counsel, Washington, DC, was on the brief, for the Office of Bar Counsel.

Before WAGNER, Chief Judge,* and SULLIVAN, Associate Judge, and MACK, Senior Judge.

---

* *Judge* WAGNER was an *Associate Judge* of this court at the time of argument. Her status changed to *Chief Judge* on June 14, 1994.

WAGNER, Chief Judge:

Petitioner, Bernard Bettis, seeks to be reinstated as a member of the Bar of the District of Columbia, having consented to disbarment in 1984. The hearing committee which held hearings on the petition for reinstatement, the Board on Professional Responsibility (the Board), and Bar Counsel all oppose reinstatement. The Board concluded that petitioner failed to show by clear and convincing evidence that he meets the requirements for reinstatement. Two members of the Board concurred in the Board's result, concluding that while petitioner had met his burden of proof of fitness for reinstatement, he is currently ineligible for reinstatement because he failed to file an affidavit of compliance with the disbarment order pursuant to D.C.Bar R. XI, § 14(f). The issues before this court are whether petitioner has shown by clear and convincing evidence that he is fit to resume the practice of law, and whether his failure to file an affidavit and registration statement currently render him ineligible for reinstatement. We hold that petitioner has demonstrated that he is a fit person to resume the practice of law and that the rules governing the circumstances of this case do not render petitioner ineligible for consideration for reinstatement at this time.

## I.

Two separate matters gave rise to the disciplinary charges pending against petitioner when he consented to disbarment in 1984. The charges for one matter arose out of petitioner's unauthorized use of funds which he held as successor guardian of the estate of five minor children. Petitioner was removed as guardian on January 11, 1979, and the court referred the matter to the Auditor–Master. The Auditor–Master found that petitioner had used estate assets for his own purposes and that petitioner was accountable to the estate in the amount of $1,531.91. The court ratified the Auditor–Master's report, entered a judgment against petitioner in the amount of $1,531.91, a sum which was reduced subsequently, and referred the matter to the Board. Bar Counsel charged petitioner with four separate violations related to this guardianship estate: illegal conduct involving moral turpitude (DR 1–102(A)(3)); dishonesty (DR 1–102(A)(4)); commingling (DR 9–103(A)); failure to maintain records (DR 9–103(B)(3)); and neglect (DR 6–101(A)(3)).[1]

The second case involved petitioner's representation of a client in an appeal from an adjudication of paternity and the entry of a support order. The client had appeared pro se at the trial level, and he retained petitioner to represent him on appeal. Petitioner filed a Notice of Appeal on October 2, 1981, and he instructed the client to stop making support payments. The Maryland Court of Special Appeals dismissed the appeal because it had not been perfected. Although petitioner received notice of the dismissal, he failed to notify his client of the disposition or to instruct him to resume support payments. In June 1982, the client was arrested for nonpayment of support and held in the Prince George's County Jail pending payment of the arrears. In connection with this matter, Bar Counsel charged petitioner with violations of DR 6–101(A)(3) (neglecting a legal matter entrusted to him) and DR 7–101(A)(2) (failure to carry out a contract of employment entered with a client).[2]

On March 15, 1984, in the face of these pending charges, petitioner signed an Affidavit of Consent to Disbarment. On July 24, 1984, this court entered an order disbarring petitioner, effective August 3, 1984. The Ma-

---

1. On March 1, 1990, this court entered an Order promulgating the Rules of Professional Conduct Applicable to Members of the District of Columbia Bar, with an effective date of January 1, 1991. Effective January 1, 1991, the Code of Professional Responsibility (which contained the Canons, Ethical Considerations, and Disciplinary Rules) in effect on December 31, 1990, was rescinded. As to conduct occurring prior to the rescission of the Code of Professional Responsibility, the provisions of the disciplinary rules in effect on the date of the conduct apply. The charges in this case are listed under the former rules.

2. The Hearing Committee which heard petitioner's reinstatement motion found that petitioner failed to request that the Maryland Court of Special Appeals withdraw the appeal after he concluded that it was not meritorious.

ryland Court of Appeals entered an order on March 5, 1986, disbarring petitioner. *Attorney Grievance Comm'n v. Bettis,* 305 Md. 452, 505 A.2d 492 (1986). On July 22, 1991, petitioner filed a petition for reinstatement. In this petition, petitioner asserted that he had executed the consent for disbarment under the mistaken impression that it was in the nature of a request for a continuance in the disciplinary proceedings. He did not address the misconduct for which he was charged. Bar Counsel moved to dismiss the petition, and petitioner filed an amended petition on September 1, 1991. The matter proceeded to an evidentiary hearing on the amended petition before Hearing Committee No. 4.

On June 25, 1992, the Hearing Committee issued its report recommending that the petitioner's Amended Motion for Reinstatement be denied. The Hearing Committee determined that although petitioner acknowledged the "terrible" things he had done and their "gravity," "his testimony was not sufficient, in the view of the Hearing Committee, to persuade the Committee that he truly appreciated the seriousness of his conduct." The Hearing Committee also found that petitioner had not met his burden of establishing his present qualifications and competency to practice law and his present fitness of character. The majority of the Board members declined to disturb the Hearing Committee's finding on the question of petitioner's lack of recognition of the seriousness of his misconduct and his failure to demonstrate conduct since discipline which would remedy past wrongs or prevent future ones and show present fitness of character. Therefore, the

Board recommended that the Petition for Reinstatement be denied. However, the Board disagreed with the Hearing Committee's conclusion that the attorney had not demonstrated his present qualifications and competence to practice law.

## II.

We address preliminarily an issue raised in the concurring opinion filed by two of the Board members [3] which resulted in their conclusion that the petition must be denied. These members concurred in the result reached because petitioner had failed to file an affidavit required by D.C.Bar R. XI, § 14(f). In this affidavit, the disbarred attorney must set forth that the attorney has complied with all aspects of the rule including, *inter alia,* that the attorney has notified all clients of the disbarment and advised them to seek advice elsewhere. D.C.Bar R. XI, § 14(a), (b), and (f).[4] D.C.Bar R. XI, § 16(c) currently provides in pertinent part, as follows:

> [A] disbarred attorney shall not be eligible for reinstatement until five years shall have elapsed following the attorney's compliance with section 14....

Since petitioner did not submit an affidavit until August 23, 1993, if the rule applies, petitioner would not be eligible for reinstatement until August 1998. *See id.; see also In re Mulkeen,* 606 A.2d 136, 137 (D.C.1992) (if the suspended attorney complies with Rule XI, § 14 within the required ten-day period, for purposes of reinstatement, the suspension relates back to the suspension date).

---

**3.** Francis D. Carter, Esquire, filed a concurring opinion in which James McKay, Esquire, joined.

**4.** Rule XI, § 14(f), reads as follows:

(f) *Required affidavit and registration statement.* Within ten days after the effective date of an order of disbarment or suspension, the disbarred or suspended attorney shall file with the Court and the Board an affidavit:

(1) Demonstrating with particularity, and with supporting proof, that the attorney has fully complied with the provisions of the order and with this rule;

(2) Listing all other state and federal jurisdictions and administrative agencies to which the attorney is admitted to practice; and

(3) Certifying that a copy of the affidavit has been served on Bar Counsel. The affidavit shall also state the residence or other address of the attorney to which communications may thereafter be directed. The Board may require such additional proof as it deems necessary. In addition, for five years following the effective date of a disbarment or suspension order, a disbarred or suspended attorney shall continue to file a registration statement in accordance with Rule II, stating the residence or other address to which communications may thereafter be directed, so that the attorney may be located if a complaint is made about any conduct of the attorney occurring before the disbarment or suspension. See also section 16(c).

When petitioner consented to disbarment in this case, the rules did not provide for the commencement of the period of disbarment to be deferred until the lawyer files the required affidavit. As the majority pointed out in its report, prior to the adoption of D.C.Bar R. XI, § 16(c), an attorney's failure to comply with the requirements of Rule XI, § 14 was used as a factor for evaluating a reinstatement petition rather than as a disqualifying factor.[5] *Cf. In re Goldberg,* 460 A.2d 982, 985 (D.C.1983).[6] While petitioner must bear the consequences of his failure to file the affidavit, those consequences must be consistent with those applied in other cases, and they should be in keeping with the rules as they existed at the pertinent time. *See Luck v. District of Columbia,* 617 A.2d 509, 514 (D.C.1992).[7] Accordingly, the petition for reinstatement is not premature. Therefore, we turn to consideration of the merits of the petition.

### III.

#### a. Standard of Review

In a disciplinary case, the ultimate determination of whether an attorney will be reinstated rests with the court. *In re Harrison,* 511 A.2d 16, 18 (D.C.1986); *In re Roundtree,* 503 A.2d 1215, 1217 (D.C.1985). Although the recommendations of the Board and the Hearing Committee are entitled to great weight, this court must determine independently whether an attorney meets the criteria for reinstatement. *Harrison,* 511 A.2d at 18; *Roundtree,* 503 A.2d at 1217. Petitioner bears the burden of proving by clear and convincing evidence that he "has the moral qualifications, competency, and

learning in law required for readmission." D.C.Bar R. XI, § 16(d), *i.e.,* that he is " 'rehabilitated and a fit person to resume the practice of law.' " *In re Brown,* 617 A.2d 194, 197 (D.C.1992) (quoting *Roundtree,* 503 A.2d at 1218); *see also In re Stanton,* 532 A.2d 95, 96 (D.C.1987); *Harrison,* 511 A.2d at 18. In order for petitioner to be reinstated, he must convince the Board, and ultimately the court

> that his ... resumption of the practice of law will not be detrimental to the integrity and standing of the Bar, or to the administration of justice, or subversive to the public interest.

*Roundtree,* 503 A.2d at 1217 (citation and internal quotation marks omitted).

In interpreting the criteria for reinstatement set forth in D.C.Bar R. XI, § 21(5),[8] this court has identified five factors for consideration:

> (1) the nature and circumstances of the misconduct for which the attorney was disciplined; (2) whether the attorney recognizes the seriousness of the misconduct; (3) the attorney's conduct since discipline was imposed, including the steps taken to remedy past wrongs and prevent future ones; (4) the attorney's present character; and (5) the attorney's present qualifications and competence to practice law.

*Roundtree, supra,* 503 A.2d at 1217 (citations omitted); *accord, Brown, supra,* 617 A.2d at 196; *Stanton, supra,* 532 A.2d at 96–97; *Harrison, supra,* 511 A.2d at 18. We consider each of the factors as a part of our independent review to determine whether petitioner's resumption of the practice of law will be "detrimental to the integrity and standing

---

5. The Board cites *In re Haupt,* No. 88–460 (D.C. April 12, 1989), in support of its statement.

6. In *Goldberg,* we noted that the attorney's delay in notifying Bar Counsel, pursuant to D.C.Bar R. XI, § 18(5)(d), of disciplinary action imposed in another state should be taken into account by the Board in its recommendation in any reciprocal suspension proceeding. 460 A.2d at 985. The parallel suggests the efficacy of a similar procedure when an attorney delays in filing the affidavit due under Rule XI, § 14(f).

7. The *Luck* case deals with the principles governing whether legislation should be applied retro-

actively. 617 A.2d at 514. Generally " '[s]tatutes are not to be given retroactive effect or construed to change the status of claims fixed in accordance with earlier provisions unless the legislative purpose to do so plainly appears.' " *Id.* (quoting *United States v. Magnolia Petroleum Co.,* 276 U.S. 160, 162–63, 48 S.Ct. 236, 237, 72 L.Ed. 509 (1928)). However, statutes which have no effect on substantive rights do not contravene this general rule. *Edwards v. Lateef,* 558 A.2d 1144, 1147 (D.C.1989).

8. Current D.C.Bar R. XI, § 16(d) in this respect is comparable to former D.C.Bar R. XI, § 21(5).

of the Bar, or to the administration of justice, or subversive to the public interest." D.C.Bar R. XI, § 16(d)(2).

### b. The Nature of the Misconduct

■ In his Affidavit of Consent to Disbarment, petitioner acknowledged only a violation of DR 9–103(A) (commingling funds). Other charges were pending, and the Board, in determining the first *Roundtree* factor, the seriousness of the charge, heard evidence bearing on the other charges. These included DR 1–102(A) (illegal conduct involving moral turpitude), DR 1–102(A)(4) (engaging in dishonest, fraudulent, and deceitful conduct in handling the guardianship estate and in reports to the court thereon), DR 9–103(B)(3) and § 14 of Rule XI (failing to maintain complete records of guardianship funds), and DR 6–101(A)(3) (neglecting an appellate case). Although petitioner does not challenge the seriousness of the conduct with which he was charged, he contends that it was not of such a nature as to bar reinstatement upon proof that he has satisfied the other *Roundtree* criteria.[9] We agree that although the conduct which led to disbarment was extremely serious, it is not necessarily a permanent bar to reinstatement. *See In re McBride,* 602 A.2d 626, 641 (D.C. 1992) (en banc) (attorney disbarred for conviction of a crime under D.C.Code § 11–2503(a) (1989) no longer deemed disbarred for life). Although of primary importance in considering the petition for reinstatement, it is not the sole relevant factor. *See Roundtree,* 503 A.2d at 1217.

### c. Recognition of the Seriousness of the Misconduct

The Board concluded that petitioner had failed to present clear and convincing evidence that he recognized the seriousness of his misconduct. Even though petitioner acknowledged that he engaged in misconduct, the Board found evidentiary support for the Hearing Committee's conclusion that some of

**9.** Petitioner also does not challenge the Board's consideration in these proceedings of the charges for which he did not consent to disbarment. *See Brown, supra,* 617 A.2d at 197. Here, as in *Brown,* we conclude that the attorney also acknowledged the seriousness of the remaining

petitioner's testimony was equivocal. Petitioner contends that, viewed in its entirety, the record supports that he appreciated the wrongfulness of his misconduct.

We agree with the concurring members of the Board and with petitioner on this issue. First, petitioner consented to disbarment, acknowledging from the beginning the seriousness of his misconduct and accepting early on the sanctions which followed. Petitioner also acknowledged that his conduct in handling the guardianship estate was not simply "technically or ethically wrong," but that it was "morally wrong" as well. Confronted with the Hearing Committee's perception that he seemed to be reluctant to admit some major aspects of his misconduct, petitioner stated:

> All I can say is I've had to live with this for over eight years and I've had to think about this.... I hope that my appearance of reluctance is just that, appearance of reluctance. I think that I'm truly remorseful for having done what I've done and if there were any words that I could use or conduct that I could display, I would do that to communicate to you my true feelings.

■ As the Board points out in its report, petitioner acknowledged greater details of his defalcations on cross-examination than on direct. Nevertheless, petitioner also admitted to serious misconduct on direct examination. For example, he acknowledged placing some of the cash belonging to the guardianship estate in his own account, and he stated in that connection, "I appreciate the wrongfulness for that act because there was no excuse for doing it." It is the success of Assistant Bar Counsel in eliciting on cross-examination many details of the most serious charges which the Board weighed against petitioner in spite of his admissions. However, we agree with the concurring opinion of the Board's members who concluded that respondent admitted his faults and acknowl-

charged misconduct. Therefore, we need not consider how to treat unresolved charges of misconduct which did not form the basis of disbarment when a petition for reinstatement is presented. *Id.*

edged the wrongfulness of his conduct. There is ample evidentiary support that petitioner recognizes the seriousness of his misconduct.[10]

### d. Attorney's Conduct Since Discipline

Contrary to the Board's conclusion, petitioner argues that his conduct since disbarment has demonstrated his fitness to resume the practice of law. According to his testimony, he spent the first four years following disbarment out of the country engaged in aviation and cargo business ventures. Petitioner recounts his return to this country and how he represented himself pro se in certain legal matters. Petitioner also testified that he assisted other practicing attorneys in preparing documents and pleadings for medical malpractice cases. To avoid the pitfalls of the past, petitioner stated that if readmitted to the Bar, he would not handle fiduciary cases (e.g., guardianships, conservatorships, or receiverships). He plans to engage in a personal injury, medical malpractice, and products liability practice, associating with other attorneys who have established bookkeeping systems. Petitioner also indicated that he plans to use bookkeepers and accountants or similar experts in his practice and that he is aware of the need to maintain separate accounts for client funds.

Bar Counsel argues the position taken by the Board that petitioner had a long period of time outside of the United States which has not been fully explained. This, according to the Board and Bar Counsel, reflect adversely on petitioner's conduct since disbarment. Moreover, he did not attend professional education courses and failed to file the section 14 affidavit. While weighing against petitioner his failure to attend professional courses in reviewing petitioner's conduct since discipline was imposed, the Board finds those same practical experiences compelling in demonstrating petitioner's competence to practice law. The Board states in its report

While attendance at continuing legal education programs is undoubtedly worthwhile evidence concerning the attorney's present competence, practical experience and education such as [p]etitioner received during the past four years can be equally, if not more, probative of an attorney's skills.

We see no reason to accord less consideration to these experiences for purposes of the third *Roundtree* factor than we do for the fifth.

The record is not devoid of evidence of petitioner's business activities abroad. At any rate, petitioner has been back in the country since 1988. Therefore, there has been a long period during which he has engaged in activities related to the legal profession which can form the basis of a full assessment of the steps he has taken to remedy past wrongs. While petitioner's failure to file the section 14 affidavit is a factor which weighs against him, considering that there appears to have been no adverse consequences as a result thereof and that he has now filed the affidavit, this fact alone is insufficient to bar a ruling in petitioner's favor on the third *Roundtree* factor.[11]

### e. Present Character and Competence to Practice Law

Petitioner argues that the Board erred in disregarding the uncontradicted testimony of his four character witnesses. The Hearing Committee found the opinions of these witnesses to be outweighed by petitioner's reluctance to admit his misconduct. We have already addressed this point and found that the record supports a contrary conclusion. The Board accorded little weight to the testimony of petitioner's character witnesses because they were too unfamiliar with petitioner's past transgressions. However, in spite of any absence of detail of the events underlying petitioner's disbarment, each of these witnesses had some familiarity with petitioner's misconduct and had heard petitioner ex-

---

10. While we are required to accept the finding of the Board if supported by substantial evidence in disciplinary cases, we are not similarly required to do so in reinstatement proceedings. *Roundtree, supra,* 503 A.2d at 1217. In any event, there exists substantial evidence that respondent met his burden of proof on this issue.

11. Petitioner characterizes his failure to file the affidavit as harmless oversight as he had no clients at all when he was disbarred, and he received the notice while he was out of the country. In light of these facts, we would agree.

press remorse for it. All expressed confidence in his present good character. Although such evidence would not be sufficient alone to warrant reinstatement, *Roundtree, supra,* 503 A.2d at 1218, when considered with other evidence of the steps that petitioner has already taken and plans to take in the future to avoid committing similar disciplinary violations, this character evidence weighs in favor of reinstatement.

Finally, the Board found that petitioner established that he is competent to resume the practice of law, and we agree. Petitioner has worked as a law clerk, at times without compensation, and improved his legal research and writing skills. Petitioner has developed particular expertise in the field of medical malpractice and personal injury, according to the witnesses. He also has definite plans designed to avoid any problems with handling clients' funds.

Having considered the evidence against the relevant criteria, we are satisfied that petitioner has proven by clear and convincing evidence that he has the "moral qualifications, competency, and learning in law required for readmission" and that his reinstatement "will not be detrimental to the integrity and standing of the Bar, or the administration of justice, or subversive to the public interest." D.C.Bar R. XI, § 16(d)(2); *see also Roundtree, supra,* 503 A.2d at 1217. Therefore, the petition for reinstatement is granted.

*So ordered.*