**In re Carl P. FOGEL, Petitioner.**

**No. 95–BG–1384.**

District of Columbia Court of Appeals.

Argued April 15, 1996.

Decided July 11, 1996.

---

Carl P. Fogel, pro se. W. Barry Wraga filed a brief for petitioner.

Elizabeth A. Herman, Senior Assistant Bar Counsel, with whom Leonard H. Becker, Bar Counsel, was on the brief, for the Office of Bar Counsel.

Before STEADMAN and RUIZ, Associate Judges, and MACK, Senior Judge.

STEADMAN, Associate Judge:

Petitioner, an attorney disbarred by this court in 1989 following his conviction of a crime involving moral turpitude, *see* D.C. Code § 11–2503, seeks reinstatement as a member of the Bar of the District of Columbia. *See* D.C. Bar R. XI, § 16. The Board on Professional Responsibility (the Board), agreeing with the Hearing Committee, unanimously recommends that the petition for reinstatement be denied. We agree that petitioner has not met his burden of demonstrating by clear and convincing evidence that he is entitled to reinstatement. *See* D.C. Bar R. XI, § 16(d). Accordingly, we deny the petition for reinstatement.

### I.

Following a joint investigation by the Federal Bureau of Investigation (FBI) and the Metropolitan Police Department (MPD) into trafficking in stolen property, which led to convictions of two of petitioner's clients, petitioner was charged in a fourteen-count indictment with, *inter alia,* obstruction of justice, D.C. Code § 22–703;[1] subornation of perjury, D.C. Code § 22–2501;[2] 18 U.S.C. § 2, and conspiracy to participate in the affairs of an enterprise through a pattern of racketeering, 18 U.S.C. §§ 2, 1962(d). The charges stemmed from petitioner's involvement in a fencing operation that was conducted at Royal Carpet Company, a business in Northwest Washington that was operated by Joseph Martin, one of petitioner's clients who had been convicted in connection with the FBI/MPD investigation. In 1986, pursuant to a plea agreement, petitioner was convicted in federal district court on his *Alford* plea[3] on one count of receiving embezzled property,[4] and was subsequently disbarred as required by statute. D.C. Code § 11–2503(a).

Petitioner filed a petition for reinstatement on September 13, 1993. *See* D.C. Bar R. XI, § 16; *In re McBride,* 602 A.2d 626, 641 (D.C.1992) (en banc).[5] Hearings were held

---

1. *Repealed,* D.C. Law 4–164, 29 D.C.Reg. 3976 (1982), *recodified as* D.C. Code §§ 22–721 *et seq.*

2. *Repealed,* D.C. Law 4–164, 29 D.C.Reg. 3976 (1982), *recodified as* D.C. Code § 22–2512.

3. *See North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) (guilty plea with assertion of factual innocence).

4. D.C. Code § 22–1204, *repealed,* D.C. Law 4–164, 29 D.C.Reg. 3976 (1982), *recodified as* D.C. Code § 22–3832.

5. Appellant reapplied for reinstatement at the earliest possible time, indeed apparently prematurely, see D.C. Bar R. XI, § 16(a) (disbarred attorney "may not apply for reinstatement until the expiration of at least five years from the

before the Hearing Committee in February and June 1994. In his direct testimony before the Hearing Committee, petitioner admitted to receiving stolen property, assisting his client (Martin) in criminal endeavors, obstructing justice by conspiring with Martin to avoid detection by the police, and misrepresenting facts to a court. On cross-examination, petitioner admitted to knowing that Martin was engaged in fencing operations, to witnessing purchases of stolen property at Martin's store, to counseling Martin how to avoid detection by law enforcement authorities, and to advising Martin to lie to the police.

One of the exhibits before the Hearing Committee was a memorandum that had been submitted to the federal district court by the government in connection with petitioner's sentencing. That memorandum detailed petitioner's ongoing participation in the fencing operation run by Martin and the subsequent cover-up, including, *inter alia,* "repeated directives" to Martin to lie to the police and "subornation of perjury before courts and presentation of false testimony." With the exception of receiving certain items of jewelry, petitioner testified before the Hearing Committee that he did not disagree with the facts as set out in the government's memorandum.

The Hearing Committee, with one member dissenting, recommended that the petition for reinstatement be denied, concluding that, "in light of the egregious nature of Petitioner's misconduct and our concerns about his recognition of the seriousness of the misconduct and his current character ... [p]etitioner has not submitted clear and convincing evidence of his rehabilitation." The Board disagreed with the Hearing Committee with regard to petitioner's current character, but nevertheless recommended that the petition be denied, concluding that petitioner's misconduct was egregious, and that petitioner failed to establish that he recognized the seriousness of his misconduct.

---

effective date of the disbarment"), in circumstances where, prior to our decision in *McBride,*

## II.

In order to be reinstated, a disbarred attorney has the burden of demonstrating, by clear and convincing evidence,

(1) [t]hat [he] has the moral qualifications, competency, and learning in law required for readmission; and

(2) [t]hat [his] resumption of the practice of law ... will not be detrimental to the integrity and standing of the Bar, or to the administration of justice, or subversive to the public interest.

D.C. Bar R. XI, § 16(d).

■■■ The determination as to whether an attorney has met this burden is guided by five factors:

(1) the nature and circumstances of the misconduct for which the attorney was disciplined; (2) whether the attorney recognizes the seriousness of the misconduct; (3) the attorney's conduct since discipline was imposed, including the steps taken to remedy past wrongs and prevent future ones; (4) the attorney's present character; and (5) the attorney's present qualifications and competence to practice law.

*In re Roundtree,* 503 A.2d 1215, 1217 (D.C. 1985) (citations omitted). "Although the ultimate decision on whether an attorney is reinstated is ours alone, the Board's findings or recommendations in this regard are entitled to great weight." *In re Borders,* 665 A.2d 1381, 1381–82 (D.C.1995) (internal quotations and citations omitted).

### A.

■■ In *McBride, supra,* we held that "all attorneys disbarred upon conviction of a crime involving moral turpitude shall no longer be deemed disbarred for life under D.C. Code § 11–2503(a)." 602 A.2d at 641. However, as we recently explained in *Borders,* "in removing the sanction of permanent disbarment we did not mean to deprecate the severity of the crime for which an attorney has been convicted as a factor in deciding whether he should be reinstated." 665 A.2d at 1382. Indeed, if the misconduct consid-

---

*supra,* he would have been disbarred for life.

ered under the first *Roundtree* factor is grave and "closely bound up with [p]etitioner's role and responsibilities as an attorney," our scrutiny of the other *Roundtree* factors is heightened. *Id.*

In conducting the *Roundtree* analysis, the Board and the Hearing Committee considered not only the misconduct for which petitioner was convicted, but also the related misconduct to which he has admitted. Petitioner has not challenged this approach. Although we have previously characterized the issue as "troublesome," *see In re Brown,* 617 A.2d 194, 197 (D.C.1992), we have not squarely decided whether unadjudicated conduct is properly considered in the *Roundtree* analysis. *See id; In re Bettis,* 644 A.2d 1023, 1028 n. 9 (D.C.1994).

Nevertheless, we have stated in a disciplinary case that, "[i]n making the[ ] delicate inquiries that are essential to the preservation of integrity within our profession, it is only logical that the Board and this court should evaluate all circumstances of conduct that shed light on an attorney's fitness to practice," including "proved but unadjudicated conduct." *In re Thompson,* 478 A.2d 1061, 1064 (D.C.1984). We think that this principle applies with equal force to reinstatement proceedings, where one of our basic queries is whether "the resumption of the practice of law by the attorney will ... be detrimental to the integrity and standing of the Bar, or to the administration of justice, or subversive to the public interest." D.C. Bar R. XI, § 16(d)(2).

Petitioner's criminal activity here was plainly egregious and directly related to his practice of law. Petitioner used his position as an attorney to help his client violate the law and evade detection. In addition, in his role as an attorney, petitioner attempted to conceal the illegal activities in which he was involved by advising his client to lie to the police and commit perjury in court. And petitioner himself used his client's false testi-

mony in closing argument. Petitioner's misconduct is both egregious and "closely bound up with [his] role and responsibilities as an attorney." *Borders, supra,* 665 A.2d at 1382. Accordingly, the first *Roundtree* factor weighs heavily against reinstatement, and our scrutiny of the other factors is heightened. *Id.*[6]

### B.

The Board and the Hearing Committee both concluded that petitioner failed to meet his burden of showing recognition of the seriousness of his misconduct. The Board agreed with the Hearing Committee that petitioner has "consistently understated his role in the criminal enterprise, and minimized the seriousness of his misconduct." As discussed in Part C, *infra,* petitioner failed to discuss the details of his misconduct with his character witnesses, suggesting that he has not fully acknowledged the seriousness of his misconduct even to those people closest to him. In addition, petitioner's former law partner testified before the Hearing Committee that, even after petitioner's guilty plea, petitioner "felt ... that he hadn't done anything wrong."

We recognize that, in his testimony before the Hearing Committee, petitioner admitted to a great deal of misconduct. However, the Hearing Committee, which heard petitioner's testimony and observed his demeanor, was not convinced that petitioner has recognized the seriousness of his misconduct. Giving "great weight" to the Board's recommendation, *Borders, supra,* 665 A.2d at 1381–82, and applying heightened scrutiny, *see id.* at 1382, we conclude that petitioner has failed to establish that this factor weighs in favor of reinstatement.

### C.

We turn finally[7] to the factor over which the Board and the Hearing Committee

6. In *Borders, supra,* we left open the issue "whether the gravity of the original [misconduct] may trump every other consideration bearing on reinstatement." 665 A.2d at 1382. Because we conclude that three of the *Roundtree* factors counsel against petitioner's reinstatement, we have no occasion to decide the issue in this case.

7. No one has raised any issue with regard to the third or fifth *Roundtree* factors: petitioner's conduct since discipline was imposed, and his present qualifications and competence to practice law.

disagreed: the adequacy of the showing of petitioner's present character. The Hearing Committee concluded that petitioner failed to carry his burden on this issue because, although petitioner presented four witnesses who praised his character before the Hearing Committee, the witnesses were not familiar with the details of petitioner's misconduct that led to his disbarment. The Hearing Committee noted that the value of these witnesses' testimony was "significantly diminished," because "[w]e do not know how they would have testified if they had known" exactly what petitioner had done. The Board disagreed, concluding that petitioner met his burden on this issue because "all of the evidence presented at the hearing is that [p]etitioner is now of good character."

Cross-examination of a character witness with regard to specific acts of misconduct by the individual in question is a quintessential method of "testing the foundation of the testimony [and] the credibility of the witness." *Rogers v. United States*, 566 A.2d 69, 73 (D.C.1989) (en banc) (citations omitted). As we said in *Rogers*, when a character witness testifies as to his or her opinion of the individual in question, it is important for the factfinder to know "whether the witness' opinion has taken into account a fact actually present in [the individual's] background, *e.g.*, a previous arrest or bad act. If the witness has not done so, the worth of the witness' opinion is called into question." *Id.* at 78. In this case, the character witnesses' unfamiliarity with the details of petitioner's prior misconduct impaired their ability to fully address whether the misconduct might be re-

peated, and thus their ability to address petitioner's current character.[8]

We think that the Board too readily discounted the Hearing Committee's view of the weight of petitioner's character witnesses. Where the burden is on petitioner to demonstrate his present good character, the fact that all the evidence presented is in petitioner's favor as far as it goes does not mean that petitioner has met his burden if the weight of that evidence is found to be insufficient. The record here supports the Hearing Committee's determination to give little weight to the character testimony presented by petitioner's witnesses, especially in light of the heightened scrutiny that we apply here. *See Borders, supra*, 665 A.2d at 1382.[9]

**D.**

■ Petitioner contends that the Board erred in failing to consider a report by a psychiatrist who evaluated petitioner. The psychiatric evaluation, which was conducted at Bar Counsel's request, occurred shortly after the last hearing was held before the Hearing Committee. Only several months later, after the Hearing Committee had issued its report recommending against reinstatement, did petitioner request a copy of the psychiatric report. After obtaining the report, petitioner filed a motion before the Board to reopen and enlarge the record to include the psychiatric report. The Board did not rule on the motion. Bar Counsel argues that, by waiting so long to seek to introduce the report into evidence, petitioner waived the right to have the report consid-

---

8. For example, when asked how he knew whether petitioner would be able to avoid future misconduct, one of petitioner's character witnesses testified that petitioner "says he'll never do it again, whatever it was he did do, which I never did find out." *Cf. Borders, supra*, 665 A.2d at 1385 (despite "impressive character witnesses," petitioner failed to meet his burden of proving his present good character for reinstatement purposes because petitioner's unwillingness to explain the motivation for his past misconduct made it "very difficult for the Bar to have confidence that he will not do the same thing again") (internal quotation omitted).

9. In *Bettis, supra*, we concluded that the petitioner's evidence of his present good character "weigh[ed] in favor of reinstatement," even

though his character witnesses were unfamiliar with the details of his prior disciplinary rule violations. 644 A.2d at 1029–30. However, *Bettis* was a very different case from the one at hand. In *Bettis*, the character witnesses' opinion about whether the petitioner might repeat his misconduct was of limited importance, because the petitioner had already taken steps to avoid committing future violations of the disciplinary rules, and had specified a number of additional safeguards that he planned to implement in the event of reinstatement. *Id.* at 1030. In addition, we were not applying the heightened scrutiny that we apply here in light of the egregiousness of petitioner's misconduct and its close relation to "[p]etitioner's role and responsibilities as an attorney." *Borders, supra*, 665 A.2d at 1382.

ered by the Board. We do not reach the waiver issue, however. We have reviewed the report ourselves, and we do not think it significant enough to affect the outcome here. It may be considered along with other evidence should petitioner renew his application for reinstatement pursuant to D.C. Bar R. XI, § 16(g).

### III.

Petitioner was disbarred, pursuant to statute, for committing a crime of moral turpitude. His burden in proving his entitlement to reinstatement is a heavy one. Not only must he demonstrate his fitness for reinstatement by clear and convincing evidence, but, in view of the nature of his misconduct, our *Roundtree* analysis is conducted with heightened scrutiny. We agree with the Board and the Hearing Committee that petitioner failed to meet this heavy burden. The petition for reinstatement is

*Denied.*