**In re Clifford T. LEE, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals.**

No. 97–BG–243.

District of Columbia Court of Appeals.

Argued Feb. 5, 1998.

Decided March 5, 1998.

John A. Shorter, Jr. for respondent.

Elizabeth A. Herman, Senior Assistant Bar Counsel, with whom Leonard H. Becker, Bar Counsel, was on the brief, for the Office of Bar Counsel.

Before WAGNER, Chief Judge, and STEADMAN and KING, Associate Judges.

PER CURIAM:

Petitioner, an attorney who was disbarred by statutory mandate for commission of crimes of moral turpitude, D.C.Code § 11–2503(a) (1995), seeks reinstatement pursuant to D.C. Bar R. XI, § 16.[1] Both the hearing committee assigned to his petition and the Board on Professional Responsibility unanimously recommend that his petition be denied.

 "The burden of proof in a reinstatement case is on the petitioner to demonstrate by clear and convincing evidence that he or she is fit to resume the practice of law." *In re Robinson,* 705 A.2d 687, 689 (D.C.1998) (internal quotation omitted). Furthermore, "[a]lthough the ultimate decision on whether an attorney is reinstated is [this court's] alone, we nonetheless give great weight to the findings and recommendations of the Board." *Id.* (second alteration in original) (internal quotations omitted).

In *In re Roundtree,* 503 A.2d 1215, 1217 (D.C.1985), we set forth five factors that are to be considered in each reinstatement case, an analysis we have consistently applied, including "the nature and circumstances of the misconduct." *Id.* at 1237.[2] In cases involving statutory disbarment for the commission of crimes of moral turpitude, we have heightened our scrutiny of the factors beyond the nature of the crimes themselves where the misconduct is grave and "closely bound up with Petitioner's role and responsibilities as an attorney." *In re Borders,* 665 A.2d 1381, 1382 (D.C.1995); *In re Fogel,* 679 A.2d 1052, 1054–55 (D.C.1996).

---

1. In *In re McBride,* 602 A.2d 626 (D.C.1992) (en banc), we held that attorneys disbarred under the statute were eligible for reinstatement after the prescribed disbarment period.

2. The five factors to be considered are: "(1) the nature and circumstances of the misconduct for which the attorney was disciplined; (2) whether the attorney recognizes the seriousness of the misconduct; (3) the attorney's conduct since discipline was imposed, including the steps taken to remedy past wrongs and prevent future ones; (4) the attorney's present character; and (5) the attorney's present qualifications and competence to practice law." *Roundtree, supra,* 503 A.2d at 1217.

■ Here, both the hearing committee and the Board conscientiously and carefully considered each of the factors and found petitioner wanting. The Board's Report and Recommendation is annexed to this opinion. Substantially for the reasons set forth therein, we agree that the petition should be, and it hereby is,

*Denied.*

## APPENDIX

### DISTRICT OF COLUMBIA COURT OF APPEALS

### BOARD ON PROFESSIONAL RESPONSIBILITY

In the Matter of

### CLIFFORD T. LEE,

Petitioner.

Bar Docket No. 355–95

*REPORT AND RECOMMENDATION OF THE*
*BOARD ON PROFESSIONAL RESPONSI-BILITY*

#### I. *Prior Proceedings*

The docket number of the original disciplinary proceeding is D–8–75. The disbarment on consent order, issued on February 14, 1975, is unreported. The matter was before Chief Judge Reilly and Associate Judges Kelly, Fickling, Kern, Gallagher, Nebeker, Yeagley and Harris.

#### II. *Introduction*

Clifford T. Lee ("Petitioner") seeks reinstatement to the Bar of the District of Columbia. He was disbarred on consent by the District of Columbia Court of Appeals on February 14, 1975, after being convicted in July of 1972 of ten counts involving forgery and counterfeiting of government transportation requests and fraud in violation of 18 U.S.C. §§ 7, 13, and 508, while employed as an attorney in the Solicitor's Office of the U.S. Department of Labor. His conviction was affirmed by the United States Court of Appeals for the Fourth Circuit. *United States v. Lee*, 485 F.2d 41 (4th Cir.1973). He was sentenced to two years of incarceration.

On March 19, 1990, Petitioner filed a Petition for Reinstatement with this Board. The District of Columbia Court of Appeals, on March 6, 1991, ordered the Board to determine whether the crimes underlying Petitioner's disbarment involved moral turpitude. The Board concluded that those crimes did involve moral turpitude *per se*, and recommended that petitioner be permanently disbarred pursuant to D.C.Code, § 11–2503(a) *In re Lee*, Bar Docket No. 112–90 (B.P.R. July 12, 1991).

In light of the Court of Appeals decision in *In re McBride*, 602 A.2d 626 (D.C.1992)(en banc), abolishing permanent disbarments in this jurisdiction, Petitioner again petitioned for reinstatement on August 18, 1995.

#### III. *Hearing Committee Proceedings*

This matter was heard by Hearing Committee Number Two on October 31, 1995, and November 16, 1995.[1] At the conclusion of the hearings, the Committee filed a report in which it recommended that the Petition for Reinstatement be denied. The factual findings of the Committee leading to its ultimate conclusion are not in dispute. Rather, Petitioner takes issue with many of the adverse inferences drawn by the Committee from the undisputed evidence.

The evidence presented to the Committee showed that during the five-year period until on or about November 9, 1990, Petitioner was employed as the Chief, Division of Grants Management and Internal Equal Employment Opportunity, Urban Mass Transit Administration, the U.S. Department of Transportation ("DOT"). (Petition for Reinstatement Addendum, Question 4; Tr. I at 100–101). While so employed, he engaged in certain political activity on behalf of the campaign of Sharon Pratt Dixon (Kelly), who was running for Mayor of the District of Columbia. (Tr. I at 169)

After the election, Respondent resigned from his DOT position, and worked on Mayor Kelly's transition team. (Tr. I at 169) When the new administration took office, Petitioner was employed as Director, D.C. Office of International Business. (Petitioner's Addendum, Question 4).

---

1. Transcript references to the hearings will be referred to as Tr. I and Tr. II respectively.

On October 20, 1991, the Office of Special Counsel of the U.S. Merit Systems Protection Board ("MSPB") charged Petitioner with four violations of the Hatch Act. An Administrative Law Judge found that Petitioner had committed three Hatch Act violations, and recommended a 60–day suspension. (BX 5 at p. 2)

The ALJ's decision was appealed to the MSPB, which issued a final decision and order holding that Petitioner had committed four Hatch Act violations, and ordering his removal from service. (BX 5 at p. 19) The MSPB found that Petitioner's involvement in illegal activities was "substantive and pervasive, and continued for a long period of time, despite his professed knowledge of the Hatch Act and its restrictions." (BX 5 at p. 15). The MSPB also found that the Administrative Law Judge's assessment of Petitioner's lack of credibility as a witness was "a sound one, and worthy of deference, as it is carefully reasoned and based upon" appropriate criteria. (BX 5 at p. 9)

Evidence of certain conduct engaged in by Petitioner while employed at the DOT, apart from his Hatch Act violations, also was found by the MSPB, as well as Hearing Committee Number Two in this matter, to militate against Petitioner's credibility and character.

Thus, in August of 1990, Petitioner lied to his supervisor by claiming that he needed to take annual leave to care for his wife, whereas, in fact, he worked for the State Department on a contract basis while purportedly on annual leave. (BX 5 at p. 17; Tr. I at 215–218) In September of 1990, he requested 192 hours of annual leave, although he had not accumulated that number of hours. When the request was denied, he submitted medical statements related to an undiagnosed illness. He then performed services at the State Department on a contract basis from September 15 to October 15, 1990, during which time he was declared to be AWOL from the DOT. (Tr. I at 162–169; BX 5 at pp. 13, 17).

Another major concern of the Committee were the "numerous inaccuracies in Petitioner's answers to the Reinstatement Questionnaire." (Comm. Rep. at 8) These included misstatements as to (1) the dates he worked for the State Department; (2) the dates he was employed by the D.C. Office of International Business; (3) the debts he owed; and (3) his earnings and income. (Comm. Rep. at 8–9)

The Committee also was critical of Petitioner's failure to make any effort to repay the U.S. Government for the illegal transportation requests, amounting to approximately $1,000. (Comm. Rep. at 7–8). In addition, the Committee found to be misleading and inappropriate Petitioner's reference to himself as "Doctor," on his business cards, and concluded that his explanation for such conduct was not credible. (Comm. Rep. at 8)

Although Petitioner produced a number of character witnesses, the Committee gave little, if any, weight to their testimony for the reason that none of them had detailed knowledge of Petitioner's criminal conduct or his Hatch Act violations, and were unaware of his poor work performance and his deceptions while employed at the DOT. (Comm. Rep. at 9–11; 18–19) Nor was the Committee satisfied that Petitioner possessed the necessary qualifications and competence to resume the practice of law in this jurisdiction. (Comm. Rep. at 19)

The Committee summed up its views on Petitioner's credibility as follows:

[T]he Committee concludes that Petitioner did not exhibit truthfulness and candor in his dealings with the Committee. His expressions of remorse did not ring true; he appeared to give lip service to the concept but did not demonstrate, by words or demeanor, a full acknowledgement of the seriousness of his misconduct. (Comm. Rep. at 12)

Placing all the above in the context of the criteria for readmission to the Bar laid down Rule XI, § 16(d), and by the District of Columbia Court of Appeals in *In re Roundtree*, 503 A.2d 1215, 1217 (D.C.1985), the Committee found that Respondent met none of them, and, recommended that his petition for reinstatement be denied.

## IV. *Bar Counsel's Position*

Bar Counsel opposed the Petition for Reinstatement, and urged that the Board adopt

the Hearing Committee's recommendation that it be denied.

## V. *Discussion*

Under Rule XI, § 16(d), in order to be reinstated to the Bar of the District of Columbia, Petitioner must prove by clear and convincing evidence that (1) he has the moral qualifications, competency, and learning in law required for readmission, and (2) that the resumption of the practice of law will not be detrimental to the integrity and standing of the Bar, or to the administration of justice, or subversive to the public interest.

The Hearing Committee made numerous findings of fact which led it to conclude that Petitioner's petition should be denied. The Board is obliged to accept those findings if they are "supported by substantial evidence in the record, viewed as a whole." *In re Micheel,* 610 A.2d 231, 234 (D.C.1992).

The Hearing Committee carefully considered the evidence in relation to the following five factors which, under *Roundtree, supra,* must be applied in a reinstatement case:

(1) The nature and circumstances of the misconduct for which the attorney was disciplined;

(2) Whether the attorney recognizes the seriousness of the misconduct;

(3) The attorney's conduct since discipline was imposed, including the steps taken to remedy past wrongs and prevent future ones;

(4) The attorney's present character; and

(5) The attorney's present qualifications and competence to practice law.

*In re Roundtree,* 503 A.2d at 1217.

### 1. *Nature and Circumstances of the Misconduct*

The circumstances of Petitioner's crimes were particularly reprehensible in that he abused his position and authority, as an attorney in the Solicitor's Office of the U.S. Department of Labor, to falsify government transportation requests, and used them to travel on personal business. As the Court of Appeals pointed out in *In re Borders, supra,* at 1382:

[I]n removing the sanction of permanent disbarment we did not mean to deprecate the severity of the crime for which an attorney has been convicted as a factor in deciding whether he should be reinstated.

Moreover, the District of Columbia Court of Appeals has stated that a conviction of a crime involving moral turpitude "heightens the seriousness of [the] scrutiny of the other [*Roundtree* ] factors." *In re Fogel,* 679 A.2d 1052, 1056 (D.C.1996), *citing In re Borders,* 665 A.2d 1381, 1382 (D.C.1995).

### 2. *Recognition of Seriousness of Misconduct*

Petitioner testified that the crimes were "a dumb mistake;" that he forged and used the transportation requests because "he thought he could get away with" it; and that the crimes were something he "shouldn't have done." (Tr. I at 119, 210) The Committee did not believe that this explanation reflected sufficient remorse, in view of the seriousness of the offenses. Moreover, the Committee did not believe that Petitioner's testimony over all was credible in light of his illegal and deceptive conduct while employed at the DOT, and the substantial misstatements in the answers to the questionnaire. This Board must defer to the hearing committee on credibility issues. As noted by the Court in *In re Ray,* 675 A.2d 1381, 1387 (D.C.1996), the hearing committee is "the only decision-maker which had the opportunity to observe the witnesses and assess their demeanor." And, in *In re Micheel,* 610 A.2d 231, 234 (D.C.1992), the Court held that the Board "must defer to the 'subsidiary findings of basic facts,' which include such things as credibility determinations made by the ... fact finding body (the hearing committee)."

Moreover, the Committee concluded that the skimpy facts given by Petitioner to his character witnesses regarding his crimes reflected a lack of recognition by him of the seriousness of his misconduct.

Accordingly, we agree with the Committee's conclusion that Petitioner failed to show that he recognizes the seriousness of the misconduct which led to his disbarment.

### 3. Petitioner's Conduct Since Disbarment

The Board also accepts the Committee's findings of fact with respect to this issue, and agrees with the Committee's conclusion that Petitioner's post-disbarment conduct fell far short of comporting with the standards required by Rule XI, § 16(d) before reinstatement may be achieved. We do not believe he has shown the moral qualifications required for readmission. We conclude further that his resumption of the practice of law would be detrimental to the integrity and the standing of the Bar, and to the administration of justice, and subversive to the public interest.

Our decision in this respect is based primarily on Petitioner's Hatch Act violations, and his deceptive and deceitful conduct while employed by the DOT. Although we question the propriety of Petitioner's use of the title "Doctor" on his business card, that practice, in and of itself, should not, in our view, preclude his reinstatement. Nor should his failure to repay the Government for the cost of the illegally obtained transportation serve as a barrier.

As Petitioner pointed out, repayment was not ordered by the sentencing Court. It would be far fetched, more than two decades later, to condition reinstatement on repayment to the Government.

### 4. Present Character

Although Petitioner presented six character witnesses, none of them considered the Hatch Act violations in their evaluations of Petitioner's character, and they had only limited knowledge about his criminal convictions. Nor were they aware of his misrepresentations and deceptions while employed by the DOT. We agree with the Committee that their testimony failed to advance Petitioner's cause.

Moreover, we agree with the Committee's conclusion that Petitioner's failure to exhibit truthfulness and candor during his testimony reflected adversely on his character.

### 5. Present Qualifications and Competence.

Petitioner has been disbarred from the practice of law for more than 20 years. As pointed out by the Court of Appeals in *Roundtree, supra,* at 1218, n. 11, "[w]hat must be proven in any given case will depend, in part, on the length of the suspension or disbarment ... The longer the suspension, the stronger the showing that must be made of the attorney's present competence to practice law."

We agree with the Committee's finding that Petitioner's testimony regarding attendance at seminars and various CLE courses was insufficient proof that Petitioner "is qualified to resume the practice law, particularly when considered in the context of the other *Roundtree* factors." (Comm. Rep. at 19).

### VI. Recommendation

The Board recommends that Petitioner's Petition for Reinstatement be denied.

BOARD ON PROFESSIONAL RESPONSIBILITY

By:_____
James C. McKay

Dated: February 12, 1997

All members of the Board concur in this Report and Recommendation, except Ms. Brannan, who is recused.