**In re Carl P. FOGEL, Petitioner.**

**A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 98–BG–1901.**

District of Columbia Court of Appeals.

Submitted April 6, 1999.

Decided May 6, 1999.

Before SCHWELB and REID, Associate Judges, and MACK, Senior Judge.

PER CURIAM:

On January 30, 1989, Carl P. Fogel was disbarred following his conviction for receiving embezzled property. Fogel had also suborned perjured testimony during a client's trial, and he used the false testimony in presenting his closing argument.

On September 13, 1993, Fogel filed his first petition for reinstatement. This petition was denied by this court in *In re Fogel*, 679 A.2d 1052 (D.C.1996) (*Fogel I* ). Relying on the findings of a Hearing Committee and the report and recommendation of the Board on Professional Responsibility, we held in *Fogel I* that Fogel had failed to meet his burden of showing that reinstatement was warranted.

On January 26, 1998, Fogel filed a second petition for reinstatement. On this occasion, the Hearing Committee recommended that Fogel be reinstated. On December 23, 1998, in its report and recommendation, a copy of which is attached hereto, the Board on Professional Responsibility agreed with the Hearing Committee's assessment and, after applying the *"Roundtree"* factors,[1] recommended that this court order Fogel's reinstatement.

On December 29, 1998, the Office of Bar Counsel advised the court that it takes no exception to the Board's recommendation. Under these circumstances, the scope of our review is deferential. "Because [Bar Counsel] has not filed any exceptions to the Board's report and recommendation, this court's already considerable deference to the Board's determination ... is enhanced." *In re Hoare*, 727 A.2d 316, 317 (D.C.1999) (per curiam) (citations omitted). Giving great weight, as we must, to the Board's findings and recommendation, *Fogel I, supra*, 679 A.2d at 1054, we conclude that Fogel has shown, by clear and convincing evidence,

1. *In re Roundtree*, 503 A.2d 1215, 1217 (D.C. 1985).

1. that he has the moral qualifications, competency, and learning in law for readmission; and

2. that his resumption of the practice of law will not be detrimental to the integrity and standing of the Bar, or to the administration of justice, or subversive to the public interest.

*See* D.C. Bar R. XI, § 16(d). Accordingly, and substantially for the reasons stated by the Board, Carl P. Fogel is reinstated to the practice of law in this jurisdiction.

*So ordered.*

## APPENDIX

### DISTRICT OF COLUMBIA COURT OF APPEALS BOARD ON PROFESSIONAL RESPONSIBILITY

In the Matter of CARL P. FOGEL, Petitioner.

Docket No. 4-98

*REPORT AND RECOMMENDATION OF THE BOARD ON PROFESSIONAL RESPONSIBILITY*

### *PRIOR PROCEEDINGS*

Petitioner was disbarred by the District of Columbia Court of Appeals (the "Court") on January 30, 1989. *In re Fogel,* No. 86–1456 (D.C. Jan. 30, 1989). The panel included Associate Judges Newman and Steadman and Senior Judge Pryor. On July 11, 1996, a panel of the Court, including Judges Steadman and Ruiz and Senior Judge Mack, denied Petitioner's first petition for reinstatement. *In re Fogel,* 679 A.2d 1052 (D.C.1996).

### *BACKGROUND*

This case involves Petitioner's second petition for reinstatement following his disbarment in 1989 for his conviction of a crime involving moral turpitude *per se*—receiving embezzled property. The facts underlying the conviction are as follows.

In 1980, Petitioner was introduced to Joseph Martin by one of Petitioner's clients, Alan Danneman. That year a joint FBI/Metropolitan Police Department ("MPD") investigation led the agents and officers to two fencing operations at Royal Carpet and Tile ("Royal Carpet"), a company operated by Mr. Martin, and at ADE, Inc. ("ADE"), operated by Mr. Danneman.

Petitioner frequently visited Royal Carpet and witnessed numerous sales of stolen property. He was aware that no documentation was made of these transactions, in violation of District of Columbia law, and he knew that Mr. Martin and his employees hid stolen property on the premises of Royal Carpet. Petitioner obtained stolen jewelry from Mr. Martin's cache on at least ten separate occasions.

On September 20, 1980, a woman sold several stolen coins to Mr. Martin at Royal Carpet. Shortly thereafter, the coins were seized by a MPD Detective. Mr. Martin was charged with violation of the District of Columbia second-hand property laws, which require that purchasers of used items keep a list of the purchased items and sellers. Petitioner represented Mr. Martin at the trial on January 27, 1981. During the trial, Petitioner knowingly elicited perjured testimony and made use of the false testimony in his summation.

The investigation was concluded on April 28, 1981 with another search of Royal Carpet, ADE, and the homes of Messrs. Martin and Danneman. These men were arrested when FBI agents recovered more than $2 million in stolen jewels, precious metals, and other property. On May 14, 1982, Mr. Martin pled guilty to a violation of the federal racketeering law and other offenses. He was sentenced to eight years in prison. Mr. Danneman was also convicted of racketeering and sentenced to five years imprisonment.

In 1983, Petitioner was charged in a 14–count indictment, which included allegations of aiding and abetting, receipt of stolen goods, conspiracy to participate in the affairs of an enterprise through a pattern of racketeering, obstruction of justice, receiving embezzled property and subornation of perjury. On April 28, 1986, Petitioner pled guilty on an *Alford* plea to one count of receiving

embezzled property[1]. Petitioner was sentenced on September 11, 1986, to a suspended three to nine year term, and he was placed on three years probation, subject to the conditions that he serve the first 12 months in house custody under Residential Intensive Probation, with conditions that he pay a $5,000 fine, $350 restitution to W. Bell & Co., and that he agree to be disbarred. On January 30, 1989, the Court disbarred Petitioner pursuant to D.C.Code § 11–2503(a) based on his conviction of a crime of moral turpitude *per se.*

Petitioner filed his first petition for reinstatement on September 13, 1993. Hearing Committee Number Ten (the "Committee") found that Petitioner had failed to provide sufficient evidence of rehabilitation and that he failed to recognize the seriousness of misconduct. The Committee recommended that the petition be denied. On October 2, 1995, the Board issued a report in which it concurred with the Committee's findings and recommended against reinstatement. We found that Petitioner minimized and failed to appreciate the seriousness of his misconduct, because he consistently understated his role in the criminal enterprise. Petitioner offered character testimony from several witnesses. Although the Committee discounted this testimony because the witnesses were not familiar with the details of the misconduct that led to Petitioner's disbarment, we found that Petitioner had met his burden of demonstrating good character. We also found that his conduct since discipline was imposed was acceptable, and that his participation in continuing legal education courses and his regular reading of legal periodicals was sufficient to demonstrate his proficiency and competence to practice law.

On July 11, 1996, the Court denied the petition for reinstatement. The Court disagreed with the Board's finding that Petitioner had met his burden of proving good character. The Court found that the record supported the Committee's determination to give little weight to the character testimony presented by Petitioner's witnesses:

> In this case, the character witnesses' unfamiliarity with the details of petitioner's prior misconduct impaired their ability to fully address whether the misconduct might be repeated, and thus their ability to address petitioner's current character . . . .
> The record here supports the Hearing Committee's determination to give little weight to the character testimony presented by petitioner's witnesses, especially in light of the heightened scrutiny that we apply here.

*Fogel,* 679 A.2d at 1056 (footnotes and citations omitted).

Petitioner filed his second petition for reinstatement on January 26, 1998. Before Hearing Committee Number Three ("Committee Three"), Petitioner presented the testimony of five witnesses and testified on his own behalf Bar Counsel called no witnesses. In contrast to the first hearing, Committee Three found that Petitioner and his witnesses offered testimony that demonstrated that Petitioner appreciated the seriousness of his previous misconduct. The character witnesses, who were all aware of Petitioner's Misconduct, testified that he currently exhibits high ethical standards and is genuinely remorseful about his prior misconduct. Committee Three concluded that Petitioner had remedied the defects in his previous reinstatement proceeding and recommended that he be reinstated. The Office of Bar Counsel does not oppose reinstatement.

## ANALYSIS

For reinstatement, a petitioner must prove, by clear and convincing evidence, (1) "[t]hat he has the moral qualifications, competency, and learning in the law required for readmission" and "[t]hat [his] resumption of the practice of law will not be detrimental to the integrity and standing of the Bar, or to the administration of justice, or subversive to the public interest." D.C.App. R. XI, § 16(d). The Court has enumerated five fac-

---

1. *See North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970)(guilty plea with assertion of factual innocence).

tors to consider 'in making this determination':

(1) The nature and circumstances of the misconduct for which the attorney was disciplined;

(2) Whether the attorney recognizes the seriousness of the misconduct;

(3) The attorney's conduct since discipline was imposed, including the steps taken to remedy past wrongs and prevent future ones;

(4) The attorney's present character; and

(5) The attorney's present qualifications and competence to practice law.

*In re Roundtree,* 503 A.2d 1215, 1217 (D.C. 1985) (citations omitted).

*The Nature and Circumstances of the Misconduct*

Petitioner's misconduct was egregious and related to his practice of law. He admitted to receiving property embezzled by his client. He represented that client in a criminal trial, suborned perjured testimony, and used the false testimony in his summation. Petitioner was aware that his client was receiving stolen property and violating local laws requiring documentation of transactions involving second hand property. The egregious nature of Petitioner's misconduct weighs heavily against reinstatement and compels a heightened scrutiny of the other *Roundtree* factors. *Fogel,* 679 A.2d at 1055.

*Recognition of the Seriousness of the Misconduct*

Committee Three found that despite Petitioner's antipathy toward the prosecuting attorney in his criminal case, Petitioner "has owned up to the seriousness and wrongfulness of his conduct." Committee Report at 5. Our review of Petitioner's testimony and that of his character witnesses convinces us that Petitioner now accepts responsibility for

his misconduct and is unlikely to engage in any similar behavior in the future. (Tr. 135–152).

*Petitioner's Present Character*

As in the first hearing, all of Petitioner's character witnesses testified that Petitioner demonstrated good character. Unlike the first hearing, however, all of the witnesses were aware of the details of Petitioner's Misconduct and had discussed it with him. They were all persuaded that he accepted responsibility for his actions and was genuinely remorseful.[2] We concur with Committee Three's finding that Petitioner has met his burden on this issue.

*Petitioner's Post–Discipline Conduct and Present Qualifications and Competence to Practice Law*

Committee Three found that Petitioner's post-discipline conduct and present qualifications and competence to practice law were "not controversial during the last reinstatement proceeding or this one." Committee Report at 5. Petitioner offered additional evidence that he has endeavored to maintain his legal skills since his disbarment, 'including continuing to read legal periodicals and performing assignments for local attorneys'. (Tr. 155–58). He has not attended a continuing legal education course since the last hearing, but is willing to do so if deemed necessary by the Board or the Court. We find that Petitioner has maintained an acceptable level of legal proficiency and competency, and that his post discipline conduct has been acceptable.

*Conclusion*

The Board agrees with the recommendation of Committee Three and recommends that Petitioner be reinstated to the practice of law.

2. Tr. 25–26 (Robinson); 45–47 (Garber); 61–65 (Ratner); 120–23 (Jacobs).

**672** 

BOARD ON PROFESSIONAL RESPONSI-
BILITY

By: ─────────────────
 Terry Michael Banks
 Vice Chair

Dated: December ___, 1998

All members of the Board concur in this
Report and Recommendation.