**In re Gregory R. McCONNELL,
Respondent.**

**A Member of the Bar of the District
of Columbia Court of Appeals.**

**No. 94–BG–1395.**

District of Columbia Court of Appeals.

Submitted Sept. 5, 1995.
Decided Oct. 5, 1995.

Before SCHWELB and FARRELL, Associate Judges, and NEWMAN, Senior Judge.

PER CURIAM:

In its attached Report and Recommendation, the Board on Professional Responsibility has recommended that petitioner Gregory R. McConnell, who was disbarred by consent in 1981, be reinstated, subject to certain specified conditions. Bar Counsel supports the Board's recommendation.[1] Substantially for the reasons stated by the Board,[2] Grego-

ry R. McConnell is hereby reinstated to the Bar of this court, subject to the following conditions:

1. Petitioner shall regularly participate in The Other Bar and in AA for five years from the date of this order as long as he resides in California.

2. If and when Petitioner relocates to the District of Columbia area, he shall regularly attend AA meetings and shall report at least monthly to the Director of the District of Columbia Bar's Lawyer Counseling Program for a period of five years from the date of this order. The Director shall promptly report any concerns about Petitioner's recovery to the Board on Professional Responsibility and to Bar Counsel.

3. Petitioner shall submit to random drug testing as required by the Director of the Lawyer Counseling Program or Bar Counsel for five years from the date of this order.

4. Within six months of the date of this order, Petitioner shall provide written certification to Bar Counsel that he has completed a course in legal ethics.

5. Petitioner shall notify the Board at least one month prior to relocating to the District of Columbia area or moving from his present residence in California.

*So ordered.*

APPENDIX

District of Columbia Court of Appeals
Board on Professional Responsibility

In The Matter of GREGORY R.
McCONNELL Respondent.

Bar Docket No. 495–93

REPORT AND RECOMMENDATION OF
THE BOARD ON PROFESSIONAL
RESPONSIBILITY

The Petitioner was disbarred by consent in the District of Columbia on November 19,

---

1. Bar Counsel suggests that the words "following his relocation to the District of Columbia area" be stricken from the Board's proposed Condition No. 3 to petitioner's reinstatement. No opposition has been filed, and we adopt Bar Counsel's suggestion. We have also made several non-

substantive clarifying changes in the Board's proposed conditions.

2. We express neither agreement nor disagreement with the first paragraph of footnote 4 of the Board's Report and Recommendation.

1981. In this proceeding, he seeks reinstatement to the District of Columbia Bar. The Board recommends reinstatement with conditions.

At the time of Petitioner's disbarment, he had practiced law for five years after graduating cum laude from Howard University Law School and passing the Bar in 1976. He practiced for one year with a small firm and then ran a solo practice consisting mostly of personal injury and domestic cases.

In 1980, Petitioner began showing "marked behavioral changes," according to Wiley A. Branton, for whom Mr. McConnell had worked in 1977 and with whom he still shared office space.[1] Petitioner failed to show up at his office for days at a time; mail and phone messages from clients piled up; his secretary had no idea where he was. In 1981, Bar Counsel contacted Petitioner with complaints from nine different clients involving serious violations of the District of Columbia Code of Professional Responsibility. Reinstatement Questionnaire, at 7. Several included the misuse of a client's funds. Others involved neglect. In the face of the complaints, Petitioner consented to disbarment, and no hearing was held. He did not indicate to Bar Counsel at the time that his problems were connected to his excessive drinking and use of cocaine. As testimony would later show, he stopped using cocaine when he was disbarred. See H.C.Report at 2, 7.[2]

Over the next decade, without practicing law, Petitioner built up an impressive work record. From 1981 until 1985, he was employed first as a hearing examiner in the District of Columbia Rental Accommodations Office, next as a law clerk to the Rental Housing Commission, and ultimately as executive assistant to the Rental Housing Commission. H.C.Report at 3. In 1985, he was hired as executive director of the Rent Stabilization Board in Berkeley, California, a position he held until mid–1987 when he resigned to start his own consulting firm. Testimony at the committee hearing indicated that Petitioner was highly regarded for the work he did with the Rent Stabilization Board and, later, as a consultant and lobbyist with the California legislature.

In 1988, Mr. McConnell contacted the Client Security Fund in the District of Columbia and paid back the total of $2,274.00 that the Fund had disbursed to his aggrieved clients. PX 4.

Then in 1989, Petitioner resumed an old habit, the use of cocaine. He also increased his drinking. He began spending large sums of money for drugs; his behavior became erratic; he began missing work for large chunks of time. His wife worried constantly about him.

In 1990 and again in 1991, Petitioner received in-patient treatment for drug abuse at two different California drug treatment facilities. Tr. I at 55.[3] He could, not, however, gain control of his drug habit. Finally, in the winter of 1991, Petitioner in his own words "hit bottom." Tr. at 56. Contemplating suicide, he sought help from a friend who was a member of Alcoholics Anonymous ("AA"). As a result, in April 1991, Petitioner began to see a psychiatrist, Dr. George Woods of Oakland, California.

Dr. Woods concluded that Petitioner's drug use was caused by and was secondary to a chronic psychological disorder, depression. Tr. II at 23. He treated Petitioner for depression with Prozac and intensive psychotherapy. Tr. II at 27. As Petitioner recognized the severe depression he had suffered since childhood and began to deal with it through psychotherapy, he gained more and more control over his substance abuse.

The hearing committee found the Petitioner, his wife, his treating physician, and the other witnesses credible in their chronicling of Petitioner's successful struggle against his depression and addictions. The committee found that these disabilities were the factors that caused his misconduct in 1981 and con-

1. "PX" refers to Petitioner's exhibits.

2. The Report and Recommendation of the Hearing Committee is referred to as "H.C.Report."

3. "Tr. I" refers to the first day of the hearing held on February 24, 1994. "Tr. II" refers to the second day of the hearing held on February 25, 1994.

cluded that there is little likelihood, given his current stable situation, that they will take hold of him again. H.C.Report at 8. Petitioner regularly attends meetings of AA and The Other Bar, an organization of attorneys with addictions. He has not had a drink or used drugs since July 15, 1991. "It is a substantial understatement to say that Petitioner has been dedicated to the cessation of drug and alcohol use by himself and others," the Hearing Committee concluded. "He has succeeded in his efforts." H.C.Report at 4.

Viewed as a whole, the Hearing Committee found, the evidence is clear and convincing that petitioner is now rehabilitated and competent to return to the practice of law and satisfies the five factors identified by the Court in *In re Roundtree,* 503 A.2d 1215 (D.C.1985).[4]

In recommending reinstatement, the Hearing Committee remained concerned about Petitioner's rehabilitation. "The really hard question," the Hearing Committee wrote, "concerns Petitioner's relapse," namely, his resumption of cocaine use in 1989 and 1991. H.C.Report at 7. Presumably because of this concern, the Committee recommended reinstatement on the condition that he submit indefinitely to random drug testing at the request of Bar Counsel.

### Discussion

The Board concurs with the committee that Petitioner has satisfied the burden of proving by clear and convincing evidence that he "has the moral qualifications, competency, and learning in law required for readmission." Rule XI, § 16(d); *see In re Bettis,* 644 A.2d 1023, 1027 (D.C.1994).

The issue that concerns the Board, not for the first time, is that of imposing conditions

for reinstatement. As we noted in *In re James Brown,* Docket No. 223–93 (B.P.R. April 26, 1994), now pending before the Court of Appeals, the Board "generally" does not support conditional reinstatements. Either the petitioner is fit to return to law practice or the petitioner is not fit.

However, the Board recognizes that in cases where addictions or mental disorders play a role, a rigid concept of "fitness"—you are or you aren't—is anachronistic. Where disabilities exist, a black-and-white view of "fitness" may be neither fair to a disbarred or suspended attorney seeking reinstatement, nor fully protective of the public. When is an alcoholic sufficiently rehabilitated to practice law? When the person has gone one year without a drink? two? ten? The yardstick of time, though sometimes the only available measure, is arbitrary at best. If judged fit in other ways, why shouldn't an attorney who demonstrates successful and continuing treatment return to practice under appropriate safeguards?

Looked at another way, even after years of treatment and abstinence, an addicted attorney can slide back. A period of monitoring the performance of a formerly disabled attorney after the return to law practice could add a layer of security to a fitness showing prior to reinstatement. Indeed, the Board has observed that most recovered or recovering substance abusers welcome monitoring for a period of time.

The Court of Appeals took note of this aspect of fitness in *In re Shorter,* 603 A.2d 462, 463 (D.C.1992), where it said: "Because petitioner's disciplinary problems arose from intangible, psychological problems that are not susceptible to correction by his taking

---

4. First, while the nature of the misconduct was serious, the Hearing Committee found that Petitioner's theft of client monies and neglect of clients' interests were caused by his addiction, which if brought out at the time, under current law, would likely have stayed disbarment. H.C.Report at 6; *see In re Temple,* 629 A.2d 1203 (D.C.1993).

Second, the Hearing Committee judged that Petitioner recognizes the seriousness of his misconduct.

Third, he impressed the Hearing Committee with the high level of his professional accomplishments since his misconduct and the strength of his personal commitments to family and helping other addicts.

Fourth, the Hearing Committee found his character reliable and exemplary.

Fifth, as to his present qualifications to practice law, the Hearing Committee found "[t]he evidence is clear and convincing that Petitioner's post-disbarment employment has required Petitioner's continuing use of law, legal analysis, legal judgment, and legal writing." H.C.Report at 9.

concrete steps such as those in In re Round-tree, the Court concludes that the most likely way to assure that petitioner will not commit future disciplinary violations of the kind for which he was disbarred is to continue in effect for a period of five years, or such lesser period as the court may order upon petition by petitioner, three conditions."[5]

In the present case, Petitioner, whose misconduct was connected to drinking and cocaine use, has been sober and off drugs for only three years. However, both his own treating doctor and Bar Counsel's experts believe he has a high likelihood of a successful recovery. Dr. Woods testified that given Petitioner's motivation, his "formidable" support system, and his success in addressing his primary problem of depression, he has an "outstanding" chance of recovery. Tr. II at 34–35. Susanne Makepeace, head of the District of Columbia Bar's Addiction Counseling Program, and Dr. Richard Ratner, who examined Petitioner at Bar Counsel's request, found Petitioner's recovery excellent and both recommended reinstatement. Tr. I at 144, PX 7. Ms. Makepeace pointed to Petitioner's participation in AA and in The Other Bar as important indicators of his recovery and recommended that he continue them.

Petitioner does not object to conditions. His attorneys suggested that "in view of Ms. Makepeace's recommendations, we suggest that Mr. McConnell's continued participation in the Other Bar and Alcoholic's Anonymous be made a condition of his reinstatement for a period of two years. Within that time, we propose that Bar Counsel monitor his involvement on a monthly basis. Should at any time Bar Counsel question Mr. McConnell's participation, he must agree to undergo urinalysis with a facility of Bar Counsel's choosing."[6]

The Board agrees that Petitioner's continued participation in these support systems,

as a condition of reinstatement, would help assure the Court and the public, not so much of his present fitness, which was adequately demonstrated at the hearing, but of his continued fitness in the initial period after he returns to the practice of law.

As for how long these conditions should apply, the Hearing Committee specifically rejected Petitioner's request for a time limit. However, the Board believes that an indefinite submission to random drug testing, as proposed by the Committee, carries the concept of monitoring too far. There is nothing in the record to indicate that monitoring should be indefinite. The Board believes that five years is a reasonable period of time to impose conditions related to Petitioner's substance abuse.

The conditions we recommend are: (1) that as long as Petitioner resides in California, he be required, for the next five years, to continue participation in AA and The Other Bar; (2) that if he relocates to the District of Columbia area, he be required, for the next five years, to continue participation in AA and further to report as least monthly to the Director of the District of Columbia Bar's Lawyer Counseling Program who, if she becomes concerned about Petitioner's recovery, should report those concerns to the Board and to Bar Counsel; (3) that Petitioner submit to random drug testing at the request of the Director or the Lawyer Counseling Program or Bar Counsel, for five years after he relocates to the District of Columbia area; and (4) that Petitioner provide written certification to Bar Counsel that he has completed a course in legal ethics.

The Hearing Committee also recommends that Petitioner be required to complete two continuing legal education courses in ethics and law office management. Petitioner does not oppose these conditions.[7]

---

5. The conditions in Shorter were that the attorney continue to attend weekly meetings of Gamblers Anonymous; that he receive counseling once a month from the Bar's Lawyer Counseling Program run by Susanne Makepeace; and that he agree to a procedure for monitoring payment of his income taxes. 603 A.2d at 463.

6. Letter from Robert G. McGinley, Esquire, to Michael R. Smith, Esquire, Chair of Hearing Committee Number Seven, dated March 31, 1994 ("McGinley letter").

7. Petitioner's lawyers suggested that he attend a minimum of three continuing legal education courses to improve his business and legal skills within the next six months and provide Bar

The Board recommends that Petitioner take one course in legal ethics. We conclude that a requirement to study office management is unnecessary. Although Petitioner has been disbarred for 13 years, more that twice the length of time (five years) that he practiced law before he lost his license, these years have been spent in work closely related to the law, requiring the use of skills such as advocacy, research, and writing. Relying on the Court's order in Bettis, the Board finds these activities sufficient to reassure us on Petitioner's competence to resume practicing law.[8]

The Board notes that proposed new continuing legal education requirements in the District of Columbia may supersede similar reinstatement requirements in any case. In addition, the Board would not encourage a gratuitous use of after-the-fact legal education requirements in lieu of a rigorous standard of competence enforced before reinstatement. In contrast, issues having to do with addiction may require assessment before and monitoring after an attorney resumes practice.

Accordingly, the Board recommends that the Court reinstate Petitioner subject to the following conditions:

(1) Petitioner shall regularly participate in The Other Bar and AA for five years, as long as he resides in California.

(2) If and when Petitioner relocates to the District of Columbia area, he shall regularly attend AA meetings and report at least monthly to the Director of the District of Columbia Bar's Lawyer Counseling Program, for a period of five years. The Director shall report any concerns about Petitioner's recovery to the Board on Professional Responsibility and to Bar Counsel.

(3) Petitioner shall submit to random drug testing as required by the Director of the Lawyer Counseling Program or Bar Counsel

for five years following his relocation to the District of Columbia.

(4) Petitioner shall provide written certification to Bar Counsel that he has completed a course in legal ethics.

(5) Petitioner shall notify the Board at least one month prior to relocating to the District of Columbia area.

BOARD ON PROFESSIONAL
RESPONSIBILITY

/s/ Kate Blackwell Zumas
Kate Blackwell Zumas

Dated: October 25, 1994

All members concur in this Report except Mr. Howard, who is recused, and Ms. Brannan, who did not participate.

---

Counsel with the appropriate documentation upon his successful completion of each course. McGinley letter at 2.

8. In *Bettis*, the Court found that a petitioner's work as a law clerk preparing documents and

pleadings in personal injury and medical malpractice cases was sufficient to demonstrate competence. 644 A.2d at 1030.