In re Wendell T. ROBINSON, Petitioner.

No. 96–BG–1965.

District of Columbia Court of Appeals.

Argued Dec. 9, 1997.

Decided Jan. 22, 1998.

Samuel McClendon, Washington, DC, for petitioner.

Wallace E. Shipp, Jr., Deputy Bar Counsel, with whom Leonard H. Becker, Bar Counsel, was on the brief, for the Office of Bar Counsel.

Before SCHWELB and FARRELL, Associate Judges, and BELSON, Senior Judge.

FARRELL, Associate Judge:

On December 19, 1990, this court disbarred petitioner on the basis of his misappropriation of client funds and dishonesty. *In re Robinson,* 583 A.2d 691 (D.C.1990) (per curiam) (*Robinson I*). By a letter dated August 7, 1995, petitioner applied to the Board on Professional Responsibility for reinstatement. A hearing committee received evidence on the petition and, in a lengthy opinion, recommended that it be denied. The Board, over the dissent of three members, also recommended denial. We deny the petition for reinstatement.[1]

I.

Petitioner misappropriated a relatively modest amount of a client's money, although in circumstances which left this court in no doubt that his conduct had been dishon-

---

1. We pretermit the question whether the petition for reinstatement is premature because of petitioner's delay in filing the affidavit required by D.C. Bar R. XI, § 14(g) (1997). The Board found substantial compliance with that duty, and Bar Counsel has not urged denial of the petition on this ground in his brief to the court. We nonetheless reiterate what we said recently in *In re Wiley,* 697 A.2d 406, 407 (D.C.1997):

[D.C. Bar] Rule XI, § 16(c), makes clear that a disbarred attorney *"shall not* be eligible" for reinstatement within five years from the filing of the required § 14 affidavit. [Emphasis in *Wiley* ] The rule provides for no exceptions.... [B]efore reinstatement, five years must have elapsed from the filing of the affidavit required by Rule XI, § 14.

est. We summarized those circumstances in *Robinson . I,* 583 A.2d at 692, and do not repeat them here. As is often true in misappropriation cases marked by more than simple negligence, petitioner's dishonesty appeared to be the natural outgrowth of a gross indifference to his financial obligations, aggravated by an attempt to conceal his default from the disciplinary process.[2] That fact is important because of the court's recognition that in reinstatement cases primary emphasis should be given to matters bearing most closely on the reasons why the attorney was suspended or disbarred in the first place. *In re Roundtree,* 503 A.2d 1215, 1217 (D.C. 1985); *see id.* (one such factor is "the attorney's conduct since discipline was imposed, including the steps taken to ... prevent future [wrongs]"). In this case, the hearing committee and the Board were deeply troubled by petitioner's conduct of his financial affairs since disbarment and his lack of candor with Bar Counsel in the reinstatement process.

The Board summarized this evidence in part as follows, beginning with petitioner's involvement in Linro Enterprises:[3]

> Linro was a family partnership started by Petitioner and his wife in 1989. Initially it was used for real estate ventures and later for stock trading. Since late 1992, Linro's primary activity has been the making of a movie. Colonel James P. Allen, Jr., who testified as a character witness, was brought in as a 50% partner in the movie's production. Petitioner and his partners have invested at least $265,000 in the project since 1992, of which $240,000 came from Petitioner and his wife. Most of this money was obtained from advances on his and his wife's credit cards and the liquidation of her two pension funds. This movie venture has not produced any income but has provided significant Schedule A and C tax deductions on Petitioner's and his wife's federal tax returns.

> The checking account records for Linro were subpoenaed by Bar Counsel in connection with the reinstatement proceedings. The records show that Petitioner, his wife, and Col. Allen were signatories on the Linro checking account. Later, Col. Allen took his name off the account. Starting in June 1993 and continuing thereafter through July 1995, Petitioner wrote 28 checks on the Linro account that either bounced or created overdrafts on the account.

* * * *

> Petitioner prepares his personal tax returns. He continues to pay federal taxes for tax years 1991, 1992 and 1993 under an agreement with the Internal Revenue Service that allowed him until June 1996 to be current on his back taxes. At oral argument before the Board in September 1996, counsel for Petitioner was unable to represent whether that agreement had been satisfied.

> Petitioner failed to produce any District of Columbia tax returns at the reinstatement hearing even though they were called for by a Bar Counsel subpoena. He testified that he believed he had filed his 1991 and 1992 District of Columbia returns and did not know why those returns were not produced pursuant to the subpoena. Petitioner admitted that he had not filed his District of Columbia returns for at least 1993 and 1994. Petitioner did not know whether he owed money to the District of Columbia. He did not provide any justification for not filing his D.C. returns. Following the hearing in this matter, Petitioner submitted his D.C. tax returns for 1991 through 1994, as PX 7. The returns showed that Petitioner had not filed his 1991 or 1992 return as he testified, that his District of Columbia tax returns for all four years had been filed after the hearing, and that he owed money to the District of Columbia in two of the four tax years.

Moreover, the Board found,

> in his original and restated Reinstatement Questionnaire, Petitioner responded "not

---

**2.** *Thus,* we characterized petitioner's offer of money to his client as "tantamount to offering a bribe to his client if she would not report his misconduct." *Robinson I,* 583 A.2d at 692.

**3.** We have deleted record and transcript citations from the Board's summary.

applicable" to Question 17 as to whether he had any financial obligations "which are or have been past due more than 90 days" during the period of his discipline. He failed to disclose that he might well have past due obligations to the District of Columbia government, that he had past due obligations to the Internal Revenue Service, and that the IRS had placed a lien on his salary.

On the basis of these facts, the Board agreed with the hearing committee that petitioner's conduct of his financial affairs had been considerably "less [than] exemplary" and "demonstrate[d] the same financial irresponsibility and lack of restraint which led to his disbarment." The committee and the Board concluded as well that petitioner's evasiveness about the status of his D.C. tax obligations "raise[d] serious questions about his ability to be fully truthful in [the reinstatement] process." In recommending against reinstatement, the Board found "itself with doubts that [p]etitioner has the necessary regard for the truth and his obligations as a member of the Bar to follow and uphold all laws applicable to him, that he has the requisite controls over his financial habits, and that he has the requisite honesty to resume the practice of law."

## II.

"The burden of proof in a reinstatement case is on the petitioner to demonstrate by clear and convincing evidence that he or she is fit to resume the practice of law." *In re Roundtree,* 503 A.2d at 1216; D.C. Bar R. XI, § 16(d). Although "the ultimate decision on whether an attorney is reinstated is [this court's] alone," we nonetheless give "great

weight" to the findings and recommendations of the Board. *Roundtree,* 503 A.2d at 1217.

It is almost self-evident that an attorney disbarred for dishonest misappropriation must pay scrupulous attention to his financial obligations during the five-year period before he is eligible for and seeks reinstatement. Moreover, few things will doom a reinstatement petition more surely than a failure to cooperate frankly and completely with the investigation attending that process. Petitioner's shortcomings in both these respects left the Board unable to recommend reinstatement despite petitioner's undisputed satisfaction of other criteria relevant to the decision. *See Roundtree,* 503 A.2d at 1217.[4] We agree with the Board's analysis and recommendation.

■ First, we cannot disregard as simple "impruden[ce]"[5] petitioner's unmistakable pattern of writing checks without sufficient funds to support Linro Enterprises—behavior reminiscent of actions that led to his disbarment. *See Robinson I,* 583 A.2d at 692.[6] Second, as the Board pointed out, petitioner ran up large debts to finance a movie while behind in paying his federal taxes and while not filing his District of Columbia tax returns for four years in succession. His reply in extenuation that he was owed an aggregate refund for those years may be wrong factually,[7] and in any event cannot explain his simple disregard of the duty to file tax returns. Third, especially troublesome to us, as it was to the Board, is petitioner's evasiveness about these matters in the Reinstatement Questionnaire, in failing to respond to the subpoena for his District tax records, and in both *filing* and producing

4. Thus, the hearing committee and the Board were satisfied that petitioner appreciated the seriousness of his original misconduct and was genuine in insisting that it would not happen again; that he had made timely restitution to the client; that he had worked diligently and effectively as a law clerk for a firm since his disbarment, hence was competent to resume practice; and that, since the firm had asked him to remain with it if readmitted, he would have established bookkeeping procedures in place to account for client funds.

5. Dissenting opinion of Board Member Zumas at 2 n. 1.

6. Petitioner's explanation that all 28 instances (over a two-year period) stemmed from disregard by employees of his request to delay cashing the checks merely confirms a pattern of deliberate indifference to his obligations.

7. Bar Counsel asserted at argument that after computing penalties and interest, petitioner probably owed the District taxes for the aggregated four years, and indisputably he owed it for two of the years in which he did not file.

them after the reinstatement hearing despite implying at the hearing that he had previously filed for two of the years and could produce those returns.[8]  Taken altogether, these actions and omissions make it impossible for us to conclude that petitioner has established his fitness to resume practice by the required clear and convincing evidence.

Petitioner argues that refusal to reinstate him would be inconsistent with our decisions in previous cases, chiefly *In re Shorter*, 603 A.2d 462 (D.C.1992), which ordered reinstatement on specific conditions.  Unlike petitioner's behavior, however, Shorter's default in his tax obligations was the *cause* of his disbarment, *see In re Shorter*, 570 A.2d 760 (D.C.1990); his reinstatement petition was accompanied by proof of current and continuous management of his tax obligations with both the federal and local governments.  *See Shorter*, 603 A.2d at 463 (referencing Board's report).  Moreover, he exhibited none of the evasiveness in responding to the reinstatement inquiry that has marked petitioner's behavior.  By contrast, "equivocat[ion]" and lack of candor with the Board similar to petitioner's caused us to deny reinstatement in *In re Brown*, 617 A.2d 194, 198 (D.C.1992); only when Brown had resolved these issues of honesty did we reinstate him.  *In re Brown*, 649 A.2d 835 (D.C.1994).  The serious questions which the Board had about petitioner's ability to be fully truthful in the reinstatement process, combined with his ongoing financial mismanagement and failure to file tax returns, also distinguish this case from *In re Bettis*, 644 A.2d 1023 (D.C.1994), and *In re Harrison*, 511 A.2d 16 (D.C.1986).

In the end, therefore, we agree with Vice-Chair Brannan's conclusion for the Board that this is not a proper case in which to order reinstatement on conditions, as petitioner requests; rather,

> [t]he best correction for the situation is for Petitioner to demonstrate in a renewed reinstatement process that he has gained an understanding of the importance of candor and financial responsibility....  A year of [practice monitoring, for example] is a far less effective shield for the public than a showing by Petitioner that he can face this system with openness and candor.[9]

The petition for reinstatement is

*Denied.*

---

**8.** When Bar Counsel pointed out at the hearing that petitioner had not produced any D.C. tax returns, he responded:

> Gee, that's right.  I do have them actually.  I don't know why they weren't produced.  I'm just not sure.
> The other thing is I'm just not sure if I filed for '94 or '93.  I just don't know at this particular point.  But certainly the ones that I have I'd certainly be more than happy to turn them over.

**9.** Petitioner should also take to heart the statement of Member Taylor in concurrence:

> [A]ll of Petitioner's current stumbling blocks appear to revolve around his inability to confront and manage his financial obligations.  It may be that when Petitioner is able to confront and manage those financial obligations and to discuss them openly in a Petition for Reinstatement, he also will be able to satisfy the Hearing Committee, the Board and, ultimately, the Court of Appeals that his lack of candor in these earlier proceedings did not reflect a fundamental character flaw, but a narrower problem that has been addressed successfully and need not present an obstacle to Petitioner's reinstatement.