In re Wendell C. ROBINSON, Petitioner.

**A Member of the Bar of the District of Columbia Court of Appeals. (Bar Registration No. 377091).**

No. 04–BG–1472.

District of Columbia Court of Appeals.

Argued June 28, 2005.
Decided Jan. 18, 2007.

Wendell C. Robinson, pro se.

Joseph N. Bowman, Assistant Bar Counsel, with whom Wallace E. Shipp, Jr., Bar Counsel, was on the brief, for the Office of Bar Counsel.

Elizabeth J. Branda, Executive Attorney, for the Board on Professional Responsibility.

Before GLICKMAN, Associate Judge, and WAGNER and TERRY, Senior Judges.*

PER CURIAM:

Petitioner Wendell C. Robinson was disbarred in 1990 for misappropriation of client funds and dishonesty. *In re Robinson (Robinson I)*, 583 A.2d 691 (D.C.1990). The Board on Professional Responsibility now recommends that Robinson be reinstated to the Bar of this Court subject to financial monitoring and other specified conditions. *See* D.C. Bar Rule XI, § 16(d), (f). The recommendation of reinstatement has the express support of Bar Counsel. Robinson accepts the proposed conditions.

This is the fourth time that Robinson has petitioned for reinstatement.[1] His prior petitions all were disapproved because his financial practices were questionable, and because he was not candid in discussing them. *See, e.g., Robinson II,* 705 A.2d at 689–90. In denying Robinson's first petition, we deemed it "almost self-evident that an attorney disbarred for dishonest misappropriation must pay scrupulous attention to his financial obligations during the five-year period before he is eligible for and seeks reinstatement." *Id.* at 689. "Moreover," we added, "few things will doom a reinstatement petition more surely than a failure to cooperate frankly and completely with the investigation attending that process." *Id.* Given this history,

---

* Judge Wagner was Chief Judge of the Court at the time of argument. Her status changed to Senior Judge on December 21, 2005. Judge Terry was an Associate Judge at the time of argument. His status changed to Senior Judge on February 1, 2006.

1. Robinson's first petition for reinstatement was denied by this Court in 1998. *In re Robinson (Robinson II),* 705 A.2d 687 (D.C. 1998). Robinson withdrew his second and third petitions after Hearing Committees of the Board recommended against them in 2000 and 2003.

though neither Robinson nor Bar Counsel took exception to the Board's current recommendation in favor of reinstatement, we deemed it appropriate to request supplemental briefing and argument directed to the following issues:

(1) whether petitioner has met his burden of proving by clear and convincing evidence that he meets the requirements for reinstatement, *see* D.C. Bar R. XI, § 16(d)(1) and (2), in light of the entire record and the perceived need to impose financial monitoring and other conditions to protect the public;

(2) whether petitioner would meet the requirements for reinstatement without the recommended conditions; and

(3) whether it is appropriate to reinstate an attorney who was disbarred for misconduct where it is deemed necessary or desirable to impose monitoring and other prospective conditions pursuant to D.C. Bar R. XI, § 16(f), in order to ensure the protection of the public from further misconduct by the attorney.

We received briefs in response to our request, and thereafter heard argument, from Robinson, Bar Counsel and the Board.

█ For the reasons set forth in the Board report appended to this opinion, both the Board and Bar Counsel are convinced that Robinson at last has "establish[ed] by clear and convincing evidence that (1) he has the 'moral qualifications, competency, and learning in law required for readmission,' and (2) his resumption of the practice of law 'will not be detrimental to the integrity and standing of the Bar, or the administration of justice, or subversive to the public interest.'" *In re Reynolds*, 867 A.2d 977, 978 (D.C.2005) (quoting D.C. Bar R. XI, § 16(d)). *See also In re Roundtree*, 503 A.2d 1215, 1217 (D.C.1985) (listing five factors to be considered in evaluating reinstatement petitions).[2] In particular, addressing the issues that had stymied Robinson's prior reinstatement petitions under the third and fourth *Roundtree* factors, the Board and Bar Counsel profess themselves satisfied that Robinson has accepted appropriate financial advice, rectified his personal and business financial practices, and discussed his finances and business activities with genuine openness. Both the Board and Bar Counsel emphasize that Robinson has shown steady improvement in dealing with his finances in the years since his disbarment, and a corresponding improvement in his candor.[3]

█ Although "the ultimate decision on whether an attorney is reinstated is ours alone," we attach "great weight" to the Board's positive recommendation, *Roundtree*, 503 A.2d at 1217, especially when Bar Counsel agrees with it. *See, e.g., Reynolds*, 867 A.2d at 978; *In re (Timothy) Brown*, 845 A.2d 519, 521 (D.C. 2004). The recommendation in this case,

---

**2.** The five so-called *Roundtree* factors are: "(1) the nature and circumstances of the misconduct for which the attorney was disciplined; (2) whether the attorney recognizes the seriousness of the misconduct; (3) the attorney's conduct since discipline was imposed, including the steps taken to remedy past wrongs and prevent future ones; (4) the attorney's present character; and (5) the attorney's present qualifications and competence to practice law." 503 A.2d at 1217.

**3.** As Bar Counsel states in his brief to this Court,

Bar Counsel has spent many years and hearings dealing with Petitioner and his attempts to be reinstated. Petitioner has matured and his proof has improved over the years. Bar Counsel is finally convinced that he is sufficiently rehabilitated to warrant entrusting him with the return of his license.

Brief of Bar Counsel at 6.

as in many cases, rests heavily on the positive assessment of Robinson's credibility by the Hearing Committee that initially considered his reinstatement petition and heard him testify, "and we are reluctant to second-guess the Committee's assessment on the basis of a paper record alone." *(Timothy) Brown*, 845 A.2d at 522.

■ Our Bar Rules authorize us to impose restitution and other "appropriate" conditions on reinstatement "[i]f the petitioner is found fit to resume the practice of law...." D.C. Bar R. XI, § 16(f). The Board has stated in the past that it "generally does not support conditional reinstatements. Either the petitioner is fit to return to law practice or the petitioner is not fit." *In re McConnell*, 667 A.2d 94, 96 (D.C.1995) (appended Board Report) (internal quotation marks and citation omitted). Nonetheless, this Court occasionally has imposed conditions on reinstatement (in addition to restitution),[4] in order to "assure the Court and the public, not so much of [the attorney's] present fitness, which was adequately demonstrated ..., but of his continued fitness in the initial period after he returns to the practice of law." *Id.* at 97. In the present case, the Board recommends that Robinson be reinstated on the conditions that he must complete a course in financial management, follow the guidance of the D.C. Bar's Lawyer Practice Assistance Program on running a law office, and be supervised by a financial monitor during his first year back in practice.

The Board and Bar Counsel express confidence that Robinson meets the requirements for reinstatement without the recommended conditions. They state that the monitoring and other conditions are not "necessary or central to Petitioner's reinstatement but are clearly desirable";[5] the conditions "are intended not to cure a deficiency in Petitioner's reinstatement showing, but to add an extra measure of protection to assure Petitioner's continued fitness."[6] In other words, the recommendation of conditions in this case is consistent with our rationale for imposing conditions on other reinstatements; not because the attorney otherwise would be unfit to practice law, but because the public interest will be served by conditions that help even a fit attorney to meet the challenges of returning to practice. In Robinson's case, the recommended conditions are responsive to Robinson's historic difficulties in managing his financial affairs properly; the conditions thus are designed to serve the public interest by helping Robinson fulfill the additional financial responsibilities he will assume as a lawyer.

We have considered carefully the recommendation of the Board, seconded by Bar Counsel, that Robinson be reinstated on conditions. Giving due deference to the Board's and Bar Counsel's assessments of his character, credibility and accomplishments, we conclude that Robinson finally has met his heavy burden of proof. Accordingly, petitioner Wendell C. Robinson is hereby reinstated to the Bar of the

---

4. *See, e.g., (Timothy) Brown*, 845 A.2d at 522 (financial monitoring, continuing legal education, participation in Alcoholics Anonymous, and counseling); *In re Roxborough*, 775 A.2d 1063, 1064 (D.C.2001) (practice monitoring, counseling, and restitution); *McConnell*, 667 A.2d at 94 (participation in Alcoholics Anonymous, counseling, random drug testing, and completion of a CLE course in legal ethics); *In re (James) Brown*, 649 A.2d 835, 835–36 (D.C.1994) (practice monitoring and CLE); *In re Shorter*, 603 A.2d 462, 463 (D.C.1992) (participation in Gamblers Anonymous, counseling, and monitoring of compliance with income tax obligations).

5. Brief of Bar Counsel at 7.

6. Brief of Board on Professional Responsibility at 12.

District of Columbia, subject to the conditions set forth in the Board's report accompanying this opinion.

*So ordered.*

## REPORT AND RECOMMENDATION OF THE BOARD ON PROFESSIONAL RESPONSIBILITY

This matter comes to the Board on Professional Responsibility ("the Board") from Hearing Committee Number Nine ("the Committee"), which concluded that Wendell C. Robinson ("Petitioner") had met his burden of proving by clear and convincing evidence that he meets the requirements for reinstatement to the Bar, and that Petitioner should be reinstated with conditions. As fully set forth below, the Board agrees with the Committee and recommends that Petitioner be reinstated with conditions.

### I. *Procedural History*

A. *Background on Disbarment and Previous Applications for Reinstatement*

Petitioner was admitted to the District of Columbia Bar on February 10, 1984. He was disbarred on December 19, 1990, for violations of the D.C.Code on Professional Responsibility. *In re Robinson,* 583 A.2d 691 (D.C.1990) (per curiam) (*Robinson I*). The violations grew out of Petitioner's representation of Patricia Green in a personal injury action. Petitioner, who was principally a criminal defense lawyer, settled the claim on Ms. Green's behalf for $600.00, of which he was entitled to $120.00 and Ms. Green to $480.00. Petitioner cashed the settlement check and used all of the funds for his own purposes. He did not inform Ms. Green of this fact, did not keep a record of the transaction, and did not keep a record of what he did with the proceeds. Petitioner did not have a trust account, and his office operating account showed insufficient funds during the period when Ms. Green's funds should have been available.

Ms. Green made several unsuccessful attempts to obtain the funds, but Petitioner repeatedly misled Ms. Green about the status of her funds. Although he finally wrote her a check on his office operating account, the check was repeatedly dishonored due to insufficient funds. After Ms. Green filed a complaint with Bar Counsel's Office, Petitioner paid Ms. Green. Petitioner was found to have committed five violations: (1) dishonesty and misrepresentation, DR 1–102(A)(4); (2) commingling of a client's funds, DR 9–103(A); (3) misappropriation of a client's funds, DR 9–103(A)(2); (4) failure to maintain proper client records, DR 9–103(B)(3); and (5) failure to pay a client's funds promptly, DR 9–103(B)(4). As noted above, he was disbarred.

Petitioner's first attempt at reinstatement was denied by the District of Columbia Court of Appeals ("Court") on January 22, 1998. *In re Robinson,* 705 A.2d 687, 689 (D.C.1998) (*Robinson II*). Adopting the findings and the recommendation of the Board, the Court agreed that Petitioner had not established by clear and convincing evidence that he had met the standard for reinstatement set forth in Bar R. XI, § 16(d) and *In re Roundtree,* 503 A.2d 1215 (D.C.1985).[7] Primary among the

---

**7.** As discussed in depth below, the *Roundtree* opinion sets forth five factors that must be considered in every reinstatement case: (1) the nature and circumstances of the misconduct for which the attorney was disciplined; (2) whether the attorney recognizes the seriousness of the misconduct; (3) the attorney's conduct since discipline was imposed, including the steps taken to remedy past wrongs and prevent future ones; (4) the attorney's present character; and (5) the attorney's pres-

Court's concerns was Petitioner's continuing lack of financial responsibility and his lack of candor relating to financial matters. Specifically, the Court accepted the Board's findings that Petitioner (a) had engaged in a pattern of writing checks without sufficient funds; (b) failed to pay his federal income taxes in a timely manner; (c) failed to file income tax returns in the District of Columbia; and (d) was evasive in responding to the Reinstatement Questionnaire by not acknowledging his failure to file his D.C. tax returns. *Robinson II*, 705 A.2d at 690.

Petitioner filed a second petition for reinstatement on February 3, 1999. At Petitioner's request, that petition was temporarily withdrawn and then reinstated on August 3, 1999. The Hearing Committee assigned to consider that petition recommended denial. *In re Robinson*, Bar Docket No. 290–99 (HC Nov. 7, 2000) ("*Robinson III*"). The Hearing Committee found a continuing lack of financial responsibility and candor. In particular, it found evidence of 16 dishonored checks or withdrawals for insufficient funds in Petitioner's checking account during the six-month period preceding his second petition, and a lack of candor in answering the reinstatement questionnaire concerning his finances. Following the issuance of the Hearing Committee's recommendation, Petitioner withdrew his Petition. As a result, neither the Board nor the Court evaluated the second petition for reinstatement.

Petitioner filed a third petition for reinstatement on November 21, 2002. The matter was heard by an Ad Hoc Hearing Committee, which recommended denial of the third petition. *In re Robinson*, Bar Docket No. 513–02 (HC May 30, 2003) ("*Robinson IV*"). The Ad Hoc Hearing Committee found that, while Petitioner had made substantial progress since his first two attempts at reinstatement, he continued to demonstrate an inability to manage his finances, and his mismanagement was complicated by a substantial assumption of debt in high-risk business ventures at times when Respondent could not even pay his taxes. *Robinson IV* at 9. For example,

- Petitioner continued to bounce checks (four in August 2002). *Robinson IV* at 9;

- Petitioner failed to maintain an adequate balance in his business checking account to cover an automatic monthly debit by American Express in December 2002 (around the time he filed his third petition). *Id.*;

- Petitioner incurred a large debt on his wife's American Express account to promote a musical event at the Washington Hilton that occurred in the period between his first and second petitions for reinstatement. The debt was either $81,500 or $94,500, depending upon how it was computed, compared with gross receipts of only $4,200. *Id.* at 10–11;

- Petitioner made personal use of a business checking account he set up for Latin-dance.com, another business venture. *Id.* at 12. The Committee found Petitioner's testimony concerning his personal use of that account inconsistent, and was troubled by haphazard booking and the fact that Petitioner prepared the tax return for that account, showing significant losses to the business and significant, unsubstantiated credit to him for capital contributions. *Id.*;

- In 2001 Petitioner incurred credit card debt with Capital One Bank ("Capital One") in the amount of $652.87. *Id.* at 11. Petitioner rou-

ent qualifications and competence to practice law. *503 A.2d at 1217.*

tinely exceeded the limit on his credit card, and then started accumulating over-limit and past-due fees. *Id.* Petitioner paid $150.00 on the debt and closed the account. The Committee found "incredible" Petitioner's explanation as to why he did not believe he was liable for the balance due and noted that Petitioner was "extremely evasive and his testimony lacked any hint of credibility." *Id.* at 11–12.

While observing that Petitioner's financial record was improving,[8] the Ad Hoc Committee noted that Petitioner had been put on notice (by the decisions in the first two reinstatement proceedings) that his financial management generally and his handling of his checking account in particular would be scrutinized. *Id.* at 9. Petitioner had failed to heed the advice of the two prior Hearing Committees that he take a financial management course. The Committee also believed that the "major barrier preventing ... [it] from finding that Petitioner ... met his burden for reinstatement is that he is completely incapable of managing his financial affairs as complicated by his various business ventures." *Id.* at 13. The Committee advised that Petitioner must make a choice between being either a musical entrepreneur or being a practicing lawyer. It gave guidance as to each choice. If Petitioner wished to continue as a musical entrepreneur, then he was advised to retain a financial manager to organize the contracts, operate the checking and other accounts, and prepare the tax return. *Id.* at 13–14. It also recommended that he open a separate personal checking account. *Id.* at 14. If, on the other hand, Petitioner wished to resume the practice of law, the

Committee recommended that he "unwind the partnership, open a personal checking account for his legal-related work and personal expenses, produce an unblemished record of managing his [personal] checking account and other finances; continue to pay his taxes in a timely manner; stay out of debt; and avoid commercial transactions that have the possibility of spiraling out of control." *Id.* at 14. The Committee put it starkly: "If Petitioner wants to be a practicing lawyer above all else, he should follow this [latter] course. If he wants to be a musical entrepreneur, he should recognize that this will likely put any subsequent petition for reinstatement in jeopardy." *Id.*

The Committee advised Petitioner to take the following specific steps in order to meet his burden on a future petition:

(1) Open up a personal checking account;

(2) Deposit checks not related to business partnerships such as Latindance.com in his personal account;

(3) Maintain sufficient funds to cover all checks for a sustained period;

(4) Unwind the Latin-dance.com partnership and seek professional advice on the filing of tax returns relating to that venture; and

(5) Pay his taxes in a timely manner.

*Id.* at 15–16. The Ad Hoc Committee also suggested that, in light of Respondent's history, he be required to provide a record "that shows a 'clean' six-month performance on his checking account before he can be reinstated." *Id.* at 9. The Committee recommended that Petitioner be authorized, pursuant to D.C. Bar R. XI, § 16(g), to seek reinstatement within one year of

---

**8.** Petitioner made substantial progress paying off his federal tax liability, demonstrated a commitment to meet his financial obligation to the Washington Hilton, and had fewer bounced checks in the six-month periods preceding both the second and third petitions for reinstatement. *Id.*

the denial. *Id.* at 16. Additionally, in order to avoid delay resulting from the disciplinary review process, the Committee suggested that Petitioner withdraw his third petition and refile it when he believes he has assembled the evidence to support a petition for reinstatement "in all respects." *Id.*

Petitioner did withdraw the third petition. His Fourth Petition for Reinstatement was filed on December 5, 2003.

### B. The Current Petition for Reinstatement

This petition for reinstatement was heard by Hearing Committee Number Nine on April 7, 2004. Petitioner, appearing *pro se*, called Reginald L. Holt (Transcript of April 7, 2004 hearing ("Tr.") at 7–13), Kenneth Joseph McGhie (Tr. at 14–23), and Leonard L. Long (Tr. at 24–42).[9] By agreement of the parties, Petitioner was, thereafter, represented by Mr. Long, who conducted the direct examination of Petitioner. Tr. at 43–124. Petitioner submitted exhibits ("PX") 1–9, which included recent examples of briefs filed in courts of appeals for which he had done the legal research and prepared the first draft; a list of other briefs for which he had done the research and prepared the first draft; a listing of continuing legal education courses taken from March 1998 through November 2000, plus a course in personal finance in August 2003; and select documents from *Capital One Bank v. Wendell*

*C. Robinson,* Small Claims No. 1672–02 (D.C. Superior Court), a matter Petitioner handled *pro se* in small claims court. Petitioner's exhibits 1–9 were accepted into evidence. Tr. at 124. Bar Counsel introduced exhibits 1–14, which were also accepted into evidence. Tr. at 4. Bar Counsel presented no witnesses.

The record was held open for submission of evidence after the close of the hearing. *See* Tr. at 126, *citing* Board Rule 12.1. On April 7, 2004, Petitioner submitted three additional exhibits following the hearing: a copy of the 2002 Form W–2 of Petitioner's wife (PX 10); a copy of an American Express bill on the credit card account of Petitioner's wife, closing date 3/01/04 (PX 11); and copy of a joint Form 1040 tax return of Petitioner and his wife for 2002, dated April 15, 2003 (PX 12).

Petitioner, again acting *pro se*, submitted proposed findings and conclusions of law in his Brief of Petitioner on May 3, 2004. Bar Counsel filed her brief on May 7, 2004. Petitioner filed a Reply Brief on May 11, 2004.[10] The Hearing Committee issued its Report and Recommendation ("HC Rpt.") on October 4, 2004. Pursuant to Board Rule 12.1(c), the Committee admitted Petitioner's additional exhibits into evidence. "HC Rpt." at 9.[11] The Committee concluded that Petitioner met his burden of proof and recommended that he be reinstated with two conditions: that Petitioner enroll in and complete a course in financial management within one year of

---

**9.** These were the same three witnesses he called in the hearing on his third petition for reinstatement (Bar Docket No. 513–02).

**10.** Petitioner attached to his reply brief a copy of his American Express bill (closing date 5/02/04). This documents was not admitted into evidence. As noted by the Committee, "[u]nder Board Rule 12.1(c) '[n]o additional evidence may be submitted after the record is closed, unless otherwise ordered by the Chair of the Hearing Committee.' No request to

admit this document into the record has been made, and the Chair of the Hearing Committee does not believe that it would be useful to have the document in the record; therefore, the document has not been admitted into the record." HC Rpt. at 17.

**11.** The parties' positions on the issues and the Committee's analysis of the arguments are discussed within our analysis below.

beginning to practice law again and that he meet regularly with the Lawyer Practice Assistance Program, follow its guidance on running his office, and remain (for one year) under the supervision of a financial monitor who shall submit quarterly reports to the Board detailing Petitioner's progress.

On October 6, 2004, Petitioner filed a statement with the Board indicating that he takes no exception to the Committee's Report. Bar Counsel filed a similar statement on October 14, 2004. As there were no exceptions, no oral argument took place before the Board. Our recommendation is based upon the record of proceedings before the Hearing Committee and the Hearing Committee's findings of fact, which we adopt and incorporate by reference.

## II.   Conclusions of Law

### A.   Roundtree Factors

An attorney seeking reinstatement has the burden of proving "by clear and convincing evidence" that he has the "moral qualifications, competency, and learning in the law required for readmission," and that "the resumption of the practice of law by the attorney will not be detrimental to the integrity and standing of the Bar, or to the administration of justice, or subversive to the public interest." D.C. Bar R. XI, § 16(d). The Court of Appeals has ruled that, in determining whether a petitioner meets these requirements, the factors to be considered are: (1) the nature and circumstances of the misconduct for which the attorney was disciplined; (2) whether the attorney recognizes the seriousness of the misconduct; (3) the attorney's conduct since discipline was imposed, including the steps taken to remedy past wrongs and prevent future ones; (4) the attorney's present character; and (5) the attorney's

present qualifications and competence to practice law. *In re Roundtree*, 503 A.2d 1215, 1217 (D.C.1985). We address each of these factors in turn.

### 1.   Nature and Circumstances of the Misconduct

The misconduct resulting in Petitioner's disbarment was serious. He engaged in dishonesty, commingling, misappropriation, failure to maintain adequate records of client funds, and failure to promptly pay client funds. As discussed fully in *In Robinson I*, Petitioner used several hundred dollars of his client's money for his own purposes and then lied to her about its whereabouts. Petitioner had paid his client prior to the original disciplinary proceedings, however, and the Court of Appeals noted that his conduct was not so egregious as to preclude reinstatement. *See Robinson II*, 705 A.2d at 689 & n. 4.

### 2.   Recognition of the Seriousness of the Misconduct

Petitioner recognizes the seriousness of his misconduct. As noted by the Committee "He repaid his client. He is contrite about all aspects of his misconduct. He makes no excuses." HC Rpt. at 19. Bar Counsel does not dispute that Petitioner has met his burden of proof on this *Roundtree* factor. *See* Bar Counsel's Brief at 5.

### 3.   Post-discipline Conduct

Between his disbarment in 1990 and November 2000, Petitioner took several continuing legal education courses. He has worked as a law clerk for a number of attorneys, all of who are pleased with his work and who continue to employ him.[12]

---

**12.**  As discussed more fully, *infra,* Petitioner has worked as a law clerk since his disbar-

ment and continues to be hired on a case-by-

There is no evidence that he has engaged in conduct that would be considered a violation of the Rules.

Of course, in light of the conduct and circumstances that led to the original disciplinary proceedings, we take particular note of Petitioner's financial management and find that he has slowly, but steadily, improved his behavior with regard to his personal and business finances. As noted by the Committee, Petitioner established a personal checking account for all non-business transactions. He had not overdrawn either his personal or business checking accounts for more than thirteen (13) months by the time of the hearing in this matter.[13] Petitioner has paid all of his local and federal taxes. HC Rpt. at 21, *citing* Tr. at 52, 66, 67. There was no evidence that Petitioner has engaged in excessive or imprudent use of his own or his wife's credit since the last hearing in 2002.

Consistent with prior Hearing Committee recommendations, Petitioner took a personal finance class in August 2003. He testified that this class helped him to better understand the importance of maintaining control of his finances, and gave him tools with which to maintain that control. Tr. at 47.

We also take special note of Petitioner's business ventures because the Court of Appeals in *Robinson II*, as well as the Hearing Committees who heard *Robinson III* and *Robinson IV*, were particularly concerned about the impact of Petitioner's activities as an entertainment promoter on his ability to manage his finances. While recognizing that the record is somewhat confusing on this point, the Committee concluded that "Latin-dance.com has ceased to function as a concert promotion or CD sales business" and is now maintained "as a website providing information about Latin dance in the Washington, D.C. community." HC Rpt. at 22, *citing* Tr. at 60–62. Petitioner has committed not to use Latin-dance.com for other purposes in the future with one exception: the possible promotion of a New Year's Eve Latin Dance Party. Petitioner's Reply Brief at 6. This party has been a tradition for Latin-dance.com for several years. Petitioner has no current plans to hold such an event this year, but he has committed to hiring a manager to handle it if he does so in the future. *See* Tr. at 61; Petitioner's Reply Brief at 6–7. Finally, Petitioner has retained Kenneth McGhie, a tax attorney, to prepare any future tax returns for Latin-dance.com. Tr. at 108.

While the totality of Petitioner's post-discipline conduct since his disbarment leaves much to be desired, his financial management has been steadily improving. Moreover, since the issuance of the Ad Hoc Hearing Committee Report in *Robinson IV* (in May 2003), Petitioner has a clear record with regard to the management of his personal and business finances. He has followed the advice given to him in these many proceedings, by winding down any non-legal business ventures and by taking a class that will help him keep his personal and business finances in order. As noted by the Committee:

> ... Petitioner has finally acknowledged circumstances in his life that contributed to the behavior resulting in his disbar-

case basis by each of the attorneys who testified on his behalf at the hearing.

**13.** We recognize that there is evidence Petitioner had several overdraft problems soon after he set up the personal account in March 2003. *See* BX 11. He has had no difficulties since that time, however, and Bar Counsel recognizes that Petitioner has shown the "clean" six month performance recommended by the Ad Hoc Committee Report in *Robinson IV*. Bar Counsel's Brief at 8–9, n. 4.

ment and has taken steps to try to ensure that these circumstances do not occur again and do not interfere with his ability to fulfill his obligations to his clients, should he be permitted to resume the practice of law. We also find that he has developed a greater appreciation for the nature of his more general obligations to his clients and has recommitted himself to act in accordance with those obligations. Particularly, with respect to Latin-dance.com, we note that while Petitioner continues to seek an involvement with this enterprise, he has established limitations on the operations of Latin-dance.com and agreed to conditions in his involvement in the promotion of concerts and other events that will protect the financial interests of his clients should he return to the practice of law, while allowing him to participate, as an avocation, in something he clearly loves.

HC Rpt. at 22–23. We agree with the Committee that Petitioner's post-discipline conduct (especially in the past eighteen months) has evidenced his recognition of the causes of his misconduct and a sincere and effective resolve to correct those patterns of behavior.

### 4. Present Character

The Committee expressly found each of Petitioner's witnesses, including the petitioner, to be credible. HC Rpt. at 23. Petitioner's character witnesses expressed the highest regard for Petitioner's integrity, and indicated that he freely acknowledged his professional misconduct. HC Rpt. at 23, *citing* Tr. at 11 (Holt); at 17–18 (McGhie); and at 29–30 (Long). According to the Committee, Petitioner's testimony "reflected his remorse for the wrong done to his client, his family, and his profession." HC Rpt at 23.

Because the Court (in *Robinson II* ) and prior Hearing Committees (in *Robinson*

*III* and *Robinson IV* ) had noted Petitioner's lack of candor as a significant factor in their recommendations to deny the previous petitions for reinstatement, we find the Committee's credibility determination with regard to Petitioner especially important in this case. As noted by the Court in *Robinson II,* "[t]he best correction for the situation is for Petitioner to demonstrate in a renewed reinstatement process that he has gained an understanding of the importance of candor and financial responsibility . . . ." 705 A.2d at 690 (quoting Board Report). Petitioner's ability, finally, to be fully candid in his dealings with the disciplinary system shows that he has gained the necessary understanding of his obligations.

Bar Counsel did not present any argument to undermine the Committee's conclusions regarding the credibility of witnesses. Bar Counsel argued, however, that Petitioner's conduct in a small claims matter raises concerns about Petitioner's present character. The matter, *Capitol One Bank v. Wendell C. Robinson,* involved the $652.87 debt incurred by Respondent on his credit card. This debt was of significant concern to the Ad Hoc Hearing Committee in *Robinson IV. Robinson IV* at 11–12. Capitol One filed suit and a default judgment was issued. Petitioner was apparently unaware of the suit. When he became aware of it, he filed a motion to vacate the default on the basis of faulty service of process. The default was vacated, Petitioner filed a counterclaim, which was later dismissed and, ultimately, in December 2002, the case was settled. Bar Counsel argued that the counterclaim was frivolous and that Petitioner has not paid what he now concedes was a valid claim against him. The Committee disagreed:

In his testimony at the hearing, Petitioner testified that he improperly managed

the credit card. Tr. at 54. He also testified that he should have monitored the debt proceedings more closely, and that if he had, the matter would not have gone as far as it did. *Id.* at 56–57. In addition, he referenced what he learned in the personal finance course he took, *i.e.*, the need to constantly monitor accounts, ensure the integrity of information and take quick action when necessary. *Id.* at 48. We are sympathetic to Bar Counsel's concern that the small claims matter demonstrates something less than Petitioner's prompt acknowledgement and payment of his debt. However, the matter has now been resolved to the apparent satisfaction of all parties, and we are not inclined to revisit the litigation or to place great weight on the strategies employed therein. The important point is that Petitioner has attended to his responsibilities by lawful means and appears before us now free of this debt obligation. We also take note of Petitioner's testimony that he erred in the handling of this matter. HC Rpt. at 23–24. We, therefore disagree with Bar Counsel's suggestion that Petitioner has failed to pay a valid debt. Whatever Petitioner's debt to Capitol One may have been, it has been paid. Further, to the extent his handling of the claim was less than exemplary, Petitioner has acknowledged his error. We cannot say that the testimony regarding the Capitol One case or the portions of the record available to us justify any departure from the Committee's conclusions that Petitioner has proven his present good character by clear and convincing evidence.

### 5. Qualifications and Competence to Practice Law

Following his disbarment, Petitioner worked as a law clerk at Kenneth Mundy's firm, until Mr. Mundy's untimely death.

Thereafter, each of Petitioner's character witnesses hired Petitioner on a part-time basis to do legal research and writing for them on a case-by-case basis. They all expressed "the highest regard for Petitioner's legal competence." HC Rpt. at 24, *citing* Tr. at 9 (Holt); at 16–17 (McGhie); and at 27–29 (Long). Mr. McGhie testified that if he were to go into private practice, he would like to practice with Petitioner. HC Rpt. at 24, *citing* Tr. at 18. Petitioner supported this testimony by submission of several briefs prepared by him since 1991.

As noted by Bar Counsel, Petitioner's competence to practice law has never been questioned in any of the reinstatement proceedings and Bar Counsel does not challenge it here. *See* Bar Counsel's Brief at 14. We agree with the Committee that there is clear and convincing evidence of Petitioner's competence to practice law.

In light of all of the above, we agree with the Committee's conclusion that Petitioner has met his burden of proof on each of the five *Roundtree* factors.

### B. Conditions on Reinstatement

Although Bar Counsel argued against reinstatement, she suggested that, if reinstatement was recommended, certain conditions should be imposed upon Petitioner. Specifically, Bar Counsel suggested that Petitioner be required to (1) meet with and follow the guidance of the Lawyer Practice Assistance Committee should he choose to enter into a solo practice and (2) enroll in and complete a course in financial management within the first year of his reinstatement. Bar Counsel's Brief at 15. The Committee agreed, stating, "[w]hile Petitioner has clearly made strides in improving his ability to deal with his finances, we note that if he returns to the practice of law, his financial responsibilities will become more complicated. If he is going to succeed in handling these new challenges,

it will be important for him to have the necessary tools." HC Rpt. at 25. The Committee accepted Bar Counsel's proposed conditions and Petitioner has taken no exception to them.

The Rules Governing the Bar provide for reinstatement with conditions, *see* D.C. Bar R. XI, § 16(f), and the Court has imposed conditions where monitoring of some kind will be helpful to protect the public and/or assure that a Petitioner does not find himself in circumstances similar to those which led to his or her original disciplinary violations. *See, e.g., In re McConnell,* 667 A.2d 94 (D.C.1995) (per curiam) (participation in Alcoholics Anonymous meetings, monthly reporting to D.C. Bar's Lawyer Counseling Program, random drug testing, completion of CLE course in legal ethics); *In re Brown,* 649 A.2d 835 (D.C.1994) (per curiam) (completion of CLE classes and six months of practice monitoring for any private practice); *In re Shorter,* 603 A.2d 462 (D.C.1992) (per curiam) (continued participation in weekly meetings of Gamblers Anonymous and counseling by D.C. Bar's Lawyer Counseling Program and monitoring of income tax compliance). We agree with the Committee that Petitioner's reinstatement should be similarly conditioned. Petitioner's financial responsibilities will be complicated by a return to private practice and such complications could jeopardize the significant progress he has made in taking control of his finances. Therefore, we agree that continuing education on financial matters and monitoring and counseling by the Lawyer Practice Assistance Committee are appropriate.

### III. *Conclusion*

In light of the above, the Board recommends that Petitioner Wendell C. Robinson be reinstated with two conditions:

(1) that he enroll in and complete a course in financial management within one year of his reinstatement; and

(2) that he meet with the Lawyer Practice Assistance Program of the District of Columbia Bar and follow its guidance on running a law office. As part of this condition, Petitioner shall be under the supervision of a financial monitor, who is to be appointed by the Board through the Lawyer Practice Assistance Program, for one year following the time that he begins to practice law again. Petitioner shall meet with the monitor every three months, on a schedule to be set by the monitor, in order to formulate and execute a plan for handling client funds and managing his legal practice. The monitor shall submit quarterly reports to the Board and to Bar Counsel detailing Petitioner's progress.

All members of the Board concur in this Report and Recommendation except Ms. COGHILL–HOWARD, who did not participate.